## WALDO PAYNE, Appellant, *v.* THE TOWN OF DUNHAM, Appellee.

### APPEAL FROM McHENRY.

An idiot cannot acquire residence or settlement in any place, by virtue of his own acts. The residence or settlement of such a person is fixed either by the father or those having paramount control over him.

A person having a legal settlement in one place, that settlement continues until another is acquired in the State. A settlement in another State or country, will not change that acquired in this State, if the pauper returns to it.

Where a person moved into a town, purchased property, resided two years, and then left the State, leaving his family behind him, the settlement and residence of the family is there fixed, and if they become paupers, they are a charge upon such town.

THIS is a suit brought by the town of Dunham against Waldo Payne, before a magistrate, to recover a penalty for bringing a pauper into the said town of Dunham, by virtue of the law approved February 10, 1853, relating to paupers in Bureau and McHenry counties.

The defendant, by his attorney, appeared and made objection to plaintiff's demand for bringing Sandford Huff, a pauper, into the town of Dunham, and moved the court to dismiss the suit for want of jurisdiction. Motion overruled. Defendant withdrew his appearance. Magistrate rendered a judgment in favor of plaintiff for $100, the amount of penalty.

The defendant, in the Circuit Court, renewed his motion to dismiss the suit for want of jurisdiction and for want of proper parties. Jury waived, and cause submitted to the court.

A judgment was rendered for the plaintiff, in the court below, for full amount of penalty, $100 and costs.

Defendant excepted, and prayed an appeal.

The opinion of the Court states the facts in relation to the settlement of the pauper, and the conduct of his parents.

It was stipulated that the act to provide for the support of paupers in Bureau and McHenry counties, approved February 10, 1853, was offered in evidence in the trial of the cause, and was admitted to have been in force in McHenry county for the past eight years.

H. S. HANCHETT, for Appellant.

The evidence shows that the child's last place of residence was in the town of Dunham, it taking its residence by derivation from the last place of settlement of its parents. *Huntington* v. *Oxford,* 4 Day, 189; *Sommerset* v. *Dighton,* 12 Mass. 383; *Rex* v. *Wakefield,* 5 East, 173; *Salesbury* v. *Fairfield,* 1 Root, 131; *Norwich* v. *Windham,* 1 Root, 232.

The child could not gain a settlement of its own. Having proved a former settlement of the parents of the child in the town of Dunham, in contemplation of law that settlement is the last one, unless a later one is proven affirmatively by the town of Dunham, and that absence for any length of time cannot create any presumption that the parents had acquired a settlement elsewhere. *Huntington* v. *Oxford*, 4 Day, 189; *Sommerset* v. *Dighton*, 12 Mass. 383; *Rex* v. *Wakefield*, 5 East, 173.

A settlement once gained continues until a new one is acquired. *Chelsea* v. *Mulden*, 4 Mass. 131; *Townsend* v. *Billerica*, 10 Mass. 411; *Landuff* v. *Akinson*, 8 N. H. 532.

CHURCH & KERR, for Appellee.

CATON, C. J. Not much litigation has arisen in this State in relation to the settlement of paupers, and no case has, until now, come before this court requiring a construction of our statute on the subject. Plain and simple as the statute seems to be, the history of the judicial proceedings in older States on the subject of paupers, admonishes us that we cannot be too cautious in the beginning. The time will come when this will be a most fruitful source of litigation, and it is much better that we proceed slowly and with care, and only decide the questions as they actually arise, and that after pondering them well, rather than by a bold dash undertake to grasp and dispose of the whole subject at once, as it were, by inspiration.

This was an action to recover the penalty under the 16th section of our statute concerning paupers, for bringing a pauper into the town of Dunham, in McHenry county; and the defense is, that the pauper was lawfully settled in that town. This pauper is a helpless idiot, about eighteen years of age. Some four years before the trial, the father of the child moved to Dunham, with his wife and four or five children, purchased a house and lot and resided thereon with his family. After he had thus resided in Dunham about two years, he went off to parts unknown, and does not seem to have been heard of since. Soon after, the mother went off also, taking only this child with her, leaving the other children in a state of utter

destitution.　The town took these children and provided for and treated them as paupers; finally sold the property left in the town by the father, and probably applied the proceeds towards their support.　During the two years succeeding the departure of the mother, she returned twice with this imbecile child, but appears to have remained but a short time.　Soon after the second return to Dunham, she took the cars and went to Woodstock, where she remained at a hotel with the child some two weeks, when she paid her bill and disappeared, leaving the child.　The proof does not clearly show what instrumentality parties in Dunham had in this move of the mother, but it is intimated by the overseer of the poor of Dunham, that there was something of the kind.　It was from this hotel in Woodstock that the defendant took the child and conveyed it Dunham, for which this action was brought.　The only question is, had the child a legal settlement in Dunham at the time?

The twelfth section of our statute is this: " If any person, becoming chargeable as a pauper in this State, shall be chargeable as such pauper in the county in which he or she resided at the commencement of the thirty days immediately preceding such person becoming so chargeable."　In explanation of this, the fifteenth section provides, " The term ' residence,' mentioned in this chapter, shall be taken and considered the actual residence of the party, or the place where he or she was employed; or in case he or she was in no employment, then it shall be considered and held to be the place where he or she made it his or her home."　In most instances, there can be no difficulty in applying these provisions of the law to the actual cases as they arise, but in others, we are obliged to resort to certain well established principles of law, in the light of which the statute must be read, in order to give it its legitimate effect.　One of these is, that an idiot can acquire no residence or settlement in any place, by virtue of his or her own acts, for an idiot is incapable of exercising a will or doing an act binding on himself or others.　His residence or settlement must be derived from his father, or those having the paramount right to control him.　We are, then, to inquire,

where was the residence or settlement of the father of this child? At the time he abandoned his family, there is no question that his settlement was in Dunham. There he resided with his family on property which he owned, and had for the two years previously. There is one principle which seems to be universal in the construction and application of poor laws, both in this country and England, and that is, that a person having a legal settlement in one place, that settlement continues until he acquires a legal settlement in another place in the State. Even if he acquires a legal settlement .in another place or country, that does not change his legal settlement here, so that if he returns to this State, and becomes a pauper before he has acquired a legal settlement elsewhere in this State, he is remitted to his first legal settlement. And this principle was carried so far in the case of *Townsend* v. *Billerica,* 10 Mass. 411, that where the grandfather of the paupers had removed to another State, where their father was born, and ever resided, and where they also were born, it was held, when they came into the State where their grandfather had had a settlement, that the place of his settlement was their settlement, which had in contemplation of law ever been his settlement, which descended to his son although he had never in fact been in the State, which settlement the paupers also derived from their father. And this upon the principle, that when a residence had once been acquired in the State, that continued to him and his posterity in succession, until he or they had acquired another legal settlement in the same State or jurisdiction. If this is an artificial rule, especially when carried to this extent, it is undoubtedly a salutary and convenient one, for it is the policy of the law and promotes the good order of society, to assign to every pauper in the State a definite settlement so far as that is practicable. This may not be practicable, in these new States into which such a flood of emigration is pouring every year, from almost every State and country in the world, to the same extent that it is in older States and countries, whose population is more stable, whose increase is dependent principally upon births and not upon immigration. But this would seem to increase,

rather than to diminish, the necessity for this rule, as the object of the rule is to diminish the number of unsettled paupers, and the greater that number is, the greater the necessity of decreasing the number by assigning to as many as possible a legal settlement. And this policy is very manifest in our State, by the great facility which it affords for acquiring a settlement.

The application of this rule to the facts of this case, determines at once that this pauper was legally settled in Dunham. There, beyond question, was the legal settlement of the father, which was also the settlement of his family; and there that settlement continued, and must continue, till he or they acquired a legal settlement in some other place within the State. Of this, there is no pretense in the proof. As Dunham was the legal settlement of the pauper, the defendant incurred no liability under the statute, for conveying him into that town.

The judgment must be reversed, and the cause remanded.

*Judgment reversed.*