In the Matter of the Probate of the Will of JULIA H. B. WEBBER, Deceased.

Surrogate's Court, Kings County, June 28, 1946.

*Duncan & Duncan* for Frederick F. Russell, proponent.

*Holland V. Williams* for Eglantine B. Berger and another, objectants, respondents.

*Cadwalader, Wickersham & Taft* for Bide-A-Wee Home Association, Inc.

*McDermott & Turner* for Trustee of Masonic Hall and Asylum Fund.

*Royal A. Curtis* for Sal Fradella.

McGAREY, S. The respondent distributees question the jurisdiction of this court in probate proceedings, claiming that the decedent, at the time of her death, was domiciled in and a resident of Westchester County.

The facts are not in dispute.

The decedent for many years prior to June, 1942, lived in Kings County, where she owned and occupied a one-family dwelling. In June, 1942, she became mentally incapacitated and was, at the instance of the proponent herein, removed and admitted to the New York Hospital in White Plains, Westchester County. Her home, however, remained intact.

In December of that year the decedent was adjudicated an incompetent by the Supreme Court in Kings County, and a bank was appointed committee of her property, and the proponent, a committee of her person.

After its appointment, the bank, as such committee, sold the incompetent's dwelling, together with the furniture and furnishings. The proponent, as committee of the person, consented to such sale. The incompetent remained a patient in the hospital in White Plains until she died on September 5, 1944.

There is no dispute that from June 1, 1942, and continuously thereafter the decedent was mentally incompetent and incapable in fact to have or form an intention to change her domicile. The objectants, however, contend that the committee of her person had the power to change her domicile and did in fact change it from Kings County to Westchester County, by consenting to the disposition of the house in Brooklyn she formerly occupied and its contents.

The law of domicile is definite. Every person must have a domicile and can have only one at any one time. A person acquires a domicile of origin at birth. Such domicile of origin is that of his or her parents at the time of birth and it continues until there has been an effective change. To acquire a domicile of choice there must be an intent to abandon the prior domicile, whether of origin or choice, and an intent to acquire a new one. Actual residence in a particular locality and intent to remain there must concur.

A very excellent statement of the law of domicile is contained in *Crawford* v. *Wilson* (4 Barb. 504, 518–522), *Dupuy* v. *Wurtz* (53 N. Y. 556) and *Matter of Newcomb* (192 N. Y. 238).

The difficulty in understanding and reconciling the various decisions dealing with domicile is not in lack of knowledge and understanding of the legal principles, but in the application of the law to the facts in each particular case, due in many instances to confusing residence and domicile. Residence may at times be the same as domicile, but need not always be. While a person may have but one domicile at·one time, he can and often does have two or more residences.

In New York State, section 45 of the Surrogate's Court Act makes " residence " a basis for jurisdiction, but the courts have construed " residence ", as used there, to mean " domicile ", as distinguished from actual physical presence or residence in a particular county, and that where a person at the time of his death resides in one county, but has an actual domicile in another county, the Surrogate's Court of the county where his domicile exists is the one which has jurisdiction to administer his estate (*Matter of Rooney*, 172 App. Div. 275; *Matter of Norton*, 96 Misc. 152, affd. 175 App. Div. 981; *Matter of Martin*, 173 App. Div. 1, 3; *Matter of Bennett*, 135 Misc. 486; *Matter of Hone*, 158 Misc. 183).

In addition to the domicile of origin and domicile of choice, there is at times a third type of domicile, namely, one by operation of law, subject, of course, to the rule always applicable, that a person can have but one domicile at any one time.

A domicile by operation of law is that domicile which the law attributes to a person independent of his actual residence. It is applicable primarily to infants and incompetents and persons who are under disabilities which prevent them from acquiring a domicile of choice.

The domicile of an incompetent infant follows that of his parents, the same as any infant's domicile follows that of his parents. But an adult who has been adjudged an incompetent retains the domicile which he had at the time he became incompetent. Such an adult is incapable of a voluntary change of domicile (*Matter of Horton*, 175 App. Div. 447, 452–453).

When a person becomes incompetent the State from time immemorial has acted in its character of *parens patriæ*, and the incompetent becomes a ward of the State, which assumes the obligation to protect him in his person and property. The State acts through a committee appointed by the court. A committee of the property must preserve and protect the property

of the incompetent and deliver it over to him when he becomes competent or turn it over to his legal representative upon his death.

The committee of the property has no jurisdiction over the person of the incompetent. While in most instances the committee of the property is also the committee of the person, on many occasions separate committees are appointed, such as was done in this particular instance.

The committee of the person is charged with the responsibility of taking care of the physical needs of the incompetent, protecting his person, furnishing him with such medical and other care and treatment as is required, and looking after his health and general welfare. He may, for the convenience and welfare of the incompetent, change the incompetent's residence or place of abode, but such a change of residence does not effect a change of domicile. A change of domicile from one county within a State to another, or from one State to another State, or from one country to another country, might involve many changes in civil and property rights, such as citizenship, taxability and descent and distribution of property or the validity of any testamentary disposition made prior to his becoming incompetent. The very statement of the effect of a change of domicile should clearly indicate that a committee of the person has no right to effect a change of domicile, although he may have the power to effect a change in abode. Certainly the power to change a domicile of an incompetent person, if vested anywhere, is vested in the State acting through the Supreme Court in its function as *parens patriæ*.

A committee of an incompetent either of the person or property is subject to the direction and control of the court appointing him (Civ. Prac. Act, § 1377).

The objectants, in support of their contention, rely upon the case of *Hill* v. *Horton* (4 Dem. 88). It is true that in that case, decided in 1886, the Surrogate of Westchester County held that the legal residence of the decedent at the time of her death was in Westchester County and that the Surrogate's Court of that county had jurisdiction to probate her will. The factual situation was that the decedent, in 1882, and for some time prior thereto, was a resident of Putnam County. In July of that year, in the County Court of Putnam County, she was declared incompetent and a committee of her property was appointed and a resident of Westchester County was appointed committee of her person. The latter immediately took the decedent to live with her in Westchester County, where she

remained until her death in 1886. Her domicile of origin was in Putnam County, but prior to her incompetency she moved into Westchester County, where, for a number of years she owned and resided on a farm. In 1872 she returned to Putnam County, where she continued to reside until the time of the appointment of her committee. After such adjudication the committee of her person, a resident of Westchester County, took her to live with her. To the extent that this decision may be considered an authority for the proposition that a committee of the person has the power to change the domicile of an incompetent, this court is not in accord. The learned court in reaching its conclusion also relied upon *Lamar* v. *Micou* (112 U. S. 452, 471) and *Wood* v. *Wood* (5 Paige Ch. 596). Both of these cases involved the right of a guardian to change the residence of an infant.

There is a great distinction between the duties of a guardian of an infant and the committee of the person of an incompetent. An infant's domicile follows that of his parents, and, therefore, decisions based upon the authority of the infant's parents or guardian to change his domicile are not applicable to problems involving the power of the committee of the person to make such change.

The court also cited *Matter of Lynch* (5 Paige Ch. 120) which merely involved the right of the committee of the person to determine the actual residence, as distinguished from domicile, of an incompetent person where a third party had taken physical possession of the incompetent contrary to the wishes of her committee. The court directed such third party to deliver up the incompetent to her committee.

*Holyoke* v. *Haskins* (5 Pick. [Mass.] 20) and *Cutts* v. *Haskins* (9 Mass. 543) involved the removal of two idiot adult sisters from their deceased father's residence and domicile to that of their brother, where they remained for some time before they were adjudged incompetent and thereafter, until their death, the guardian merely acquiescing. *Payne* v. *Town of Dunham* (29 Ill. 125) involved an action for penalty for bringing an idiot baby into the town in violation of statute. The court properly held that the child's legal settlement continued to be that of its father, irrespective of the idiocy of the infant.

*Anderson* v. *Estate of Anderson* (42 Vt. 350) involved the right of the guardian of an incompetent to change his domicile by removing his furniture and effects from one district in the State to another. The incompetent resided with his wife in Woodstock and on becoming incompetent was removed to an

asylum at Brattleboro. A guardian was appointed for him in that district, who, at the request of the incompetent's wife, removed all the belongings of the incompetent to Montpelier, where the wife established herself in a home, using the furniture formerly at the initial domicile in Woodstock. The court held that the action of the wife in removing to Montpelier had established the family domicile and that the probate court of that district had jurisdiction of the incompetent's estate on his death.

The other cases cited involve determinations of other jurisdictions, and to the extent if any that they conflict with the result herein reached, this court does not consider them to be applicable.

The following cases are not in conflict with the result here reached when the facts are analyzed:

*Matter of Hyland* (24 Misc. 357) involved the denial of an application for letters of administration in New York County on the estate of a decedent who died in Oneida County. He had been a practising attorney in New York County, and after becoming incompetent was taken by his brother from New York County to Oneida County, and thereafter placed in a private sanatorium in Connecticut and finally returned to his brother's home. In 1897 his brother was appointed committee of the person and property by the Supreme Court of Oneida County. The Surrogate of New York County, in denying the application for letters of administration, held that he must assume that the Supreme Court in appointing the committee made proper inquiry as to his place of residence to determine that the decedent was a resident of Oneida County and such decision was binding on the Surrogate.

*Matter of Kassler* (173 Misc. 856) held that an adjudication of lunacy and appointment of a committee in Iowa does not constitute, upon the removal of the incompetent to this State, a basis to justify the appointment of a domiciliary committee without further inquisition. A final account had been filed in Iowa and permission requested to transmit the assets to the custody of the incompetent's wife to be administered for his benefit in New York. The Iowa court had consented to the change of domicile to New York. The court held that under such circumstances a change of domicile to New York had been effected. Were it not for such action on the part of the Iowa court a different situation would have been presented and undoubtedly the court would not have held that there had been a change of domicile.

It should be noted that none of these cases involved any appellate determination on the question. However, in *Matter of Horton* (175 App. Div. 447, *supra*) the Appellate Division of this department held that even though the decedent had changed his physical presence and residence from New York to Ohio, there had been no change of domicile because he did not have sufficient mental capacity to form and have the intent to change his domicile from New York to Ohio. There was no committee involved in that proceeding. To the same effect is *Isham v. Gibbons* (1 Bradf. 69).

*Dupuy v. Wurtz* (53 N. Y. 556) contains an excellent discussion of the rules dealing with domicile and the applicability of those rules to the facts in the particular case. The decedent there had resided in Europe for many years. The Court of Appeals stated that the conclusion of fact to be drawn from all the evidence was that the decedent, after long and constantly intending a return to the United States, had finally become satisfied that her health and nerves were such that she would be unable to do so and would probably die abroad, but that such facts did not establish an intent to adopt a foreign domicile and abandon her domicile here.

In *Matter of Porter* (34 App. Div. 147) the Appellate Division of this department ruled that an application for the appointment of a committee must be made in the judicial district where the incompetent resides, which means legal residence and not temporary residence in another county. The incompetent had been a resident of Niagara County and was declared incompetent in that county. An application was made to set aside the appointment of a committee which was denied. The committee entrusted the custody of the incompetent to a cousin who resided in Queens County and thereafter, an application was made in that county on behalf of the incompetent for the appointment of a new committee. Relatives of the incompetent applied for the transfer of the proceeding to Niagara County. This was denied and a temporary committee was appointed in Queens County. The Appellate Division reversed and held that the legal residence of the incompetent was Niagara County and the temporary residence in Queens County did not operate to change her domicile.

In *Matter of Schley* (253 App. Div. 812) an order dismissing the petition for the appointment of the committee was reversed and the proceeding transferred from Westchester County to Nassau County. The decedent's original home was in Nassau County but he had been a resident of a hospital in Westchester

County for thirteen years. The court held that his domicile was Nassau County and that the proceeding should be heard in that county and not in Westchester. There are other decisions applying the same ruling and all uniformly hold that a mere change of an incompetent's physical residence by a committee does not effect a change of domicile.

There is always the possibility of an improvement in the mental condition or even a complete cure of the affliction of a person adjudged insane (see *Jacobs* v. *Jacobs,* 127 Misc. 505, affd. 217 App. Div. 753; *Matter of Prentice,* 110 Misc. 456; *Anonymous* v. *Anonymous,* 166 Misc. 861). A committee is required to maintain the incompetent's status during his disability and our statutes provide for the restoration of the rights and property of the incompetent upon the removal of his disability. Any attempted change by the committee of his ward's domicile during incompetency would interfere with his restoration to his previous status in the event he should be cured of his affliction.

The burden of showing that a new domicile has been established is upon the person who asserts it (*Matter of Wendel,* 144 Misc. 467; *Matter of Beattie,* 129 Misc. 241; *Matter of Newcomb,* 192 N. Y. 238, 250, *supra*). The undisputed facts clearly show no intention on the part of the committee to abandon the domicile of the decedent in Kings County and establish for her a domicile at the hospital in Westchester County, even if he were possessed of such authority. The objectants have failed to sustain the burden which the law imposes upon them. Their objections must, therefore, be overruled.

Submit decree, on notice, accordingly.