S. Samuel Di Falco, S.
By decree dated December 6, 1966, this court granted ancillary letters testamentary upon the petition of a designee of the executrix which alleged that the decedent was domiciled in New Orleans and that his will was duly admitted to probate there. That decree was later vacated and the letters were revoked when it was brought to the attention of the court that the decedent had been domiciled in New York, had been judicially declared incompetent in the Supreme Court of the State of New York and at all times thereafter had a New York committee of his property. (N. Y. L. J., June 9, 1967, p. 16, col. 8, affd. 29 A D 2d 525.) The affirmance by the Appellate Division of the revocation of letters was stated to be ‘ ‘ without prejudice to a proper application for ancillary letters, stating all the facts and circumstances as to any adjudication of incompetency or purported, claimed change of domicile.” A new proceeding was thereupon initiated wherein the petition and answer framed the issue whether the decedent had effected a change of domicile and the related issue whether he was capable in law and in fact of acquiring a new domicile. A hearing of the issues of fact has been concluded.
The court must reiterate to counsel a point that it tried (seemingly in vain) to make clear during the hearing, that is, that evidence must be offered formally in court so that one’s opponent will have an opportunity to know what is being offered and to make timely objection to it. Statements which attempt to incorporate in the present record, all the records in prior proceedings, the record on appeal and countless unidentified affidavits in this and other proceedings, do not constitute proper evidence upon which a finding of fact can be predicated.
The facts established by the documentary evidence and the testimony of the witnesses are as follows: The decedent was a veteran of the first world war. He never married. After his discharge from military service he was hospitalized. While an inmate of Central Islip State Hospital, he was adjudicated an incompetent and his brother was appointed committee. Various changes in the committee of his person and property are of no significance here. It is sufficient to note that a corporate fiduciary in New York City has been committee of his property during all of the time involved herein right up to his death, and that no committee of the person was appointed after his brother’s death in 1955. The decedent’s parents had died earlier. The decedent’s only distributees at the time of his death were the two daughters of a predeceased sister. There appears to have been no family contact with the decedent after his brother’s death. The decedent was unquestionably a New *509 York domiciliary up to the time of his discharge from the care of the Veterans Administration in the year 1961.
During the year 1955 the decedent was transferred from New York to Lodwick Manor Nursing Home in New Orleans where he was placed by the Veterans Administration in connection with its rehabilitation program for veterans. This institution was operated by Mrs. Lodwick L. Keen pursuant to arrangements made by the Veterans Administration with her. The decedent was periodically visited in the nursing home by a social worker from the Veterans Administration, the last visit being on December 12, 1961. It appears that he had been admitted to the Gulfport Division of the Veterans Administration Center in Mississippi on August 13, 1959, was placed on a trial visit status May 5, 1960, and was discharged from the care and supervision of the hospital there on November 29, 1961. At the time of his discharge he was residing in Lodwick Manor Nursing Home. The diagnosis of the decedent at that time was: ‘ ‘ Schizophrenic Reaction, Chronic, Undifferentiated Type, Partial Remission.”
With respect to his discharge, the Veterans Administration advised the New York committee of his property as follows: “We visited Mr. Meyer last on December 12, 1961. This was the last of a series of visits that had been made to determine the advisability of transferring some veterans from the home and discharging others to the care of Mrs. Lodwick Keen. At that date, a decision had already been made to close out our contract with Mrs. Keen. In the months previous, the difficulty of supervising a home so far from the hospital had become increasingly burdensome. Moreover, Mrs. Keen had begun to over extend herself by trying to operate other nursing home facilities in New Orleans, so that she was not able to give Mr. Meyer the attention we felt he needed. Mr. Meyer, with medical concurrence, was among those given a choice to be transf erred to another nursing home nearer the hospital or be discharged to live in Mrs. Keen’s Nursing Home in New Orleans. Mr. Meyer chose to stay with her, stating that he had plenty of money, was well fed, and was generally content. In view of the fact that he has a metropolitan background and expressed satisfaction in being with Mrs. Keen, his decision was approved by the medical staff. He was discharged from hospital care and supervision on November 29, 1961.
“At the time of Mr. Meyer’s discharge, his personal and social adjustment was entirely adequate. Though continuing to be somewhat aloof, he was sociable and relevant when spoken to.. He had no physical problems of any consequence. Though *510 he had suffered some recurring difficulty with varicosities of his legs, it appeared that there had been considerable improvement in the management of the problem. He seemed to look forward to moving to Mrs. Keen’s home in New Orleans.”
While the decedent resided in the nursing home, he was attended by Dr. Morrison, a physician who specialized in internal medicine and geriatrics. The physician was not a psychiatrist. He first met the decedent in 1960, and he treated him for the first time in May, 1961. The physician attended the decedent only when the decedent was ill or suffered from some physical infirmity, but being the house physician at the nursing home, he also had occasion to see the decedent and to talk with him at other times. The decedent was hospitalized between 1961 and the time of his death but only for purely physical ailments. Doctor Morrison did not know at any time during the course of his treatment of the decedent that the decedent had once been declared mentally incompetent or that he ever suffered from any mental illness or had any mental problem. Doctor Morrison testified that the decedent at all times conducted rational conversations with him and he never observed any act or conversation which would indicate to him that the decedent’s mind could not function normally.
The rule of law which is to be applied herein seems to be well settled, although there have been few reported cases in this State which decided that an adjudged incompetent effected a change of his domicile. (See New York Annotations of Restatement of Conflict of Laws, § 40.) As declared in the Restatement of Conflict of Laws: “ A person who is mentally deficient may acquire a domicil of choice if he has sufficient mental capacity to choose a home.” (Restatement Conflict of Laws, 2d, § 23; § 40 Original Restatement.) The Comment to the Second Restatement says that the ‘ ‘ crucial question is whether the person has sufficient mental capacity to choose a home. That he may be incapable of managing his own affairs is not conclusive; nor is the fact that he has been adjudged incompetent and a guardian appointed over his person or property.” It is therefore a question of fact in each case whether a person who has been adjudged an incompetent has at a particular time the mental capability of choosing a new home. (1 Beale, Conflict of Laws, § 40.1; Matter of Fidelity Trust Co., 27 Misc. 118; Matter of Horton, 175 App. Div. 447, 451; Matter of Ratkowsky v. Browne, 267 App. Div. 643, 646; Annotation, 96 ALR 2d 1236, 1247-1251.)
The evidence in this record clearly requires the finding that, after his discharge from the care of the Veterans Administra *511 tion, this decedent had sufficient mental capacity to choose a home and he freely and voluntarily did so. All of the evidence indicates that he was satisfied with the care and accommodations at Lodwick Manor Nursing Home in New Orleans and that he intended to make his permanent home there. The court accordingly holds that at the time of his death the decedent was domiciled in New Orleans, Louisiana.
The original petition for ancillary letters was submitted prior to the effective date of the Surrogate’s Court Procedure Act, but the present application for ancillary letters, which followed the decision by the Appellate Division, was submitted under article 16 of that act. The second petition incorporates provisions of the earlier petition but does not contain all of the facts necessary under SCPA 1602. A supplemental petition may be submitted setting forth the additional requisite facts.