OPINION OF THE COURT
Eugene E. Peckham, J.
This is a proceeding brought by the Delaware County Commissioner of Social Services by order to show cause filed on or about March 23, 2007 and signed by the court on April 2, 2007 to extend the Mental Hygiene Law article 81 guardianship of respondent.
In the answer to the order to show cause, the attorney appointed for respondent raises two defenses: (1) the court lacks personal jurisdiction of respondent, and (2) the court must hold a hearing on the extension of the guardianship in the presence of respondent.
Lillian was determined to be incapacitated and in need of a guardian in a previous proceeding before this court resulting in findings and judgment, dated March 7, 2006, appointing the Commissioner as guardian of respondent. That judgment provided for the duration of the guardianship to last until March 31, 2007 with leave to the Commissioner to reapply for an extension, which he has now done. (Transcript at 55-59.) The court will take judicial notice of the prior record and proceedings in this matter. (Matter of Magid v Gabel, 25 AD2d 649 [1st Dept 1966]; Fisch, New York Evidence § 1065, at 602 [2d ed].)
The original hearing in this matter was held on February 2, 2006 in the room of respondent at Fox Hospital, Oneonta, New York. At that time, the court heard testimony which it found clear and convincing that the respondent was incapacitated and in need of a guardian. (Mental Hygiene Law § 81.02.) The Delaware County Commissioner of Social Services was appointed as guardian of the person and property. Among the powers granted to the guardian was the power to choose the place of abode of the ward. (Mental Hygiene Law § 81.22 [a] [9].) In exercise of that authority the Commissioner transferred Lillian to Cedar Hill Health Care Center, Randolph, Massachusetts, where she continues to reside.
A guardian appointed pursuant to article 81 of the Mental Hygiene Law has no power to change the domicile of the incapacitated person without court authorization, even though power is given to change the place of abode. (Estate of Bauch, NYLJ, Jan. 8, 2004, at 20, col 3 [Sur Ct, Suffolk County]; Brown *217 v Brown, 86 Misc 2d 71 [Sup Ct, Kings County 1976]; Matter of Webber, 187 Misc 674 [Sur Ct, Kings County 1946]; Matter of Kassler, 173 Misc 856 [Sup Ct, Queens County 1940].)
Since this court’s order appointing the guardian gave only power to choose the ward’s abode, but did not authorize a change of domicile, the respondent remains a domiciliary of Delaware County. Inasmuch as this proceeding for extension of the guardianship was authorized in the court’s original order appointing the guardian and the respondent continues to be domiciled in Delaware County, the court continues to have personal jurisdiction of respondent. (Mental Hygiene Law § 81.04.) “[I]f a judicial proceeding is begun with jurisdiction over the person of the party concerned it is within the power of a State to bind him by every subsequent order in the cause.” (Michigan Trust Co. v Ferry, 228 US 346, 353 [1913].)
Mental Hygiene Law § 81.11 (c) provides:
“(c) The hearing must be conducted in the presence of the person alleged to be incapacitated, either at the courthouse or where the person alleged to be incapacitated resides, so as to permit the court to obtain its own impression of the person’s capacity.
If the person alleged to be incapacitated physically cannot come or be brought to the courthouse, the hearing must be conducted where the person alleged to be incapacitated resides unless;
“1. the person is not present in the state.”
Pursuant to this provision of the Mental Hygiene Law this court by order dated Februaiy 5, 2008 directed that a hearing on the order to show cause for extension of the guardianship proceed without the presence of respondent. A hearing was held on March 11, 2008 at which the attorney for respondent appeared. In an analogous situation it has been held that when the alleged incapacitated person refuses to participate in the hearing her presence can be waived by the court. (Matter of E.H., 13 Misc 3d 1233[A], 2006 NY Slip Op 52101[U] [Sup Ct, Bronx County 2006].) Similarly, under Mental Hygiene Law § 81.11 (c), where a New York domiciliary resides in an out-of-state facility, her presence at the hearing can be waived.
At the hearing Erasmo Martinez, a senior caseworker in the adult protective unit of the Delaware County Department of Social Services (DSS), testified about two trips he made to visit respondent at the facility in Massachusetts in November 2007 and also a week before the hearing. At the November visit re *218 spondent became upset, agitated and screamed at Mr. Martinez. In March 2008 he testified she jumped up and screamed at him, kept walking back and forth and gave nonresponsive answers to questions. On cross-exam.ina.tion he was asked if he ever observed respondent to be violent. He answered she was aggressive and told him over and over that “he better get away from her.”
The behavior described by Mr. Martinez was very similar to the description of her behavior at the original hearing. The witnesses produced at that hearing described several incidents where respondent yelled and screamed at them and told them to get away, one time even telling a caseworker to “Get the fuck out of my face.” (Transcript at 36.)
Mr. Martinez also described attempts by DSS to locate a facility in New York State that could provide the services needed by Lillian which would be willing to consider taking her. Out of a dozen contacted, only one in Watertown, New York, was willing to consider her, but respondent refused to discuss with him a move to another facility. Martinez also testified the reason nursing homes will not consider taking her is because of her aggressive and assaultive behavior. At the original hearing the court heard testimony about an incident where she struck a deputy sheriff and a caseworker with a three liter bottle of ginger ale and was arrested for assault. Martinez also testified that about two weeks before the March hearing respondent struck an aide in the face. He also testified that she has refused to take medication prescribed by her physician.
Based upon the entire record in this proceeding the court finds that the evidence is clear and convincing that Lillian is incapacitated and continues to need a guardian. She is likely to suffer harm because of her aggressive and assaultive behavior, refusal to take prescribed medication, and, as testified at the initial hearing, her refusal to move from the tent and camper where she was living in winter weather with no running water, heat or toilet facilities. She does not appreciate the consequences of her inability and screams and yells and refuses assistance from caseworkers who are trying to help her find adequate housing. She also accuses them of having microchips to record her conversation.
The motion is granted to amend the judgment herein to continue the guardianship until further order of the court.