OPINION OF THE COURT
Robert J. Gigante, J.
For many years before her death, decedent Palma Bonora resided in Kings County, New York. On March 31, 2008, she was admitted to St. Elizabeth Ann’s Health Care and Rehabilitation in Staten Island, New York, where she passed away on July 12, 2013.
Motion to Intervene
The Public Administrator of Kings County, by his counsel, has moved pursuant to CPLR 1012 and 1013 for leave to intervene in the within proceeding and to file objections to the petition for letters of administration filed by the Public Administrator of Richmond County, which was already granted by this court pursuant to the issuance of letters of temporary administration on December 13, 2013, and full letters of administration on December 30, 2013, and for such other and further relief as this court deems just and proper. Despite the issuance of full letters to the Public Administrator of Richmond County, the Public Administrator of Kings County nonetheless proceeded with the motion.
According to the Public Administrator of Kings County, the issuance of letters in this county will interfere with his ability to discharge his fiduciary duties, as the Surrogate’s Court of Kings County issued letters of temporary administration to the Public Administrator of Kings County in the estate of Palma Bonora on December 6, 2013, and full letters of administration on December 16, 2013. Further, the Public Administrator of Kings County alleges that there are common questions of law and fact, specifically whether the decedent was domiciled in Richmond County or Kings County at the time of her death.
The Public Administrator of Richmond County opposes the motion, alleging that the Public Administrator of Kings County has no interest in the pending proceeding, that there are no common questions of law or fact, and that the Public Administrator of Kings County has no authority to act outside of his county.
*174 Pursuant to CPLR 1013,
“Upon timely motion, any person may be permitted to intervene in any action . . . when the person’s claim or defense and the main action have a common question of law or fact. In exercising its discretion, the court shall consider whether the intervention will unduly delay the determination of the action or prejudice the substantial rights of any party.”
Here, the court agrees with both parties that the main issue to be determined is domicile and therefore common questions of law or fact exist. Accordingly, in the exercise of this court’s discretion, the Public Administrator of Kings County’s motion to intervene is granted pursuant to CPLR 1013. Domicile
In this proceeding, decedent Palma Bonora was concededly a domiciliary of this State. Accordingly, the Surrogate’s Court of Richmond County and the Surrogate’s Court of Kings County both have subject matter jurisdiction of her estate (SCPA 205 [1]). Venue, however, lies in the county in which the decedent was domiciled at the time of her death (SCPA 205 [1]). Where domicile is contested, the court that first obtained jurisdiction over the estate by the commencement of a proceeding will determine domicile (Matter of Simonetti, 30 AD3d 530 [2d Dept 2006]; Matter of Bareuther, NYLJ, June 17, 1998 at 25, col 5; Matter of Margolin, 129 Misc 2d 735 [Sur Ct, NY County 1985]). Here, the Public Administrator of Richmond County first commenced this estate proceeding by filing his petition with this court on November 8, 2013. Based upon documentary proof submitted, the Public Administrator of Kings County signed and verified his petition for letters of administration and temporary administration on December 6, 2013, filed said petition, and received letters of temporary administration on that same date.
Based on the foregoing, jurisdiction in this matter was first obtained in Richmond County and the issue of domicile must be decided by this court.[1] The court recognizes that in Simonetti *175 and Margolin letters had not yet issued in either of the competing venues, however the situation presented here where surrogate’s courts in different counties have issued letters of administration to the public administrators of their respective county is a most unusual and untenable situation. Further, on March 12, 2014, the return date of the within motion, counsel for both parties agreed on the record that the main issue in this proceeding is the domicile of the decedent, and they submitted the issue of domicile to be determined by this court, after waiving their right to a hearing on the issue.
Accordingly, in the interest of equity, economy of justice, and in the best interest of the distributees in this matter, the court finds that the procedure for determining domicile set forth in Simonetti and Margolin must be followed here.
Relevant Facts
Since 2004, the decedent was a resident of S.S. Joachim and Anne Residence, in Brooklyn, New York. Prior to this time, the uncontroverted facts establish that the decedent was a longtime resident and domiciliary of Kings County.
On November 9, 2005, the decedent’s godchild, Neil Mauriello, filed a petition in Kings County Supreme Court for the appointment of a guardian of decedent’s property pursuant to Mental Hygiene Law article 81. Mauriello amended this petition on February 10, 2006, to request the additional authority to become the guardian of decedent’s person as well. By order dated July 27, 2006, the Honorable Ariel S. Belen appointed Mauriello guardian of the decedent’s person, and Mauriello and Margaret E. Alverson, Esq., as co-guardians of the decedent’s property. The appointment of Mauriello as guardian of the decedent’s person included the specific authorization to choose the decedent’s place of abode and to either raze the decedent’s home, or secure and protect the home and its contents, as he saw fit. According to testimony from a hearing conducted in the article 81 guardianship proceeding on January 3, 2008, the decedent’s residence was demolished on or about November 13 through 17 of 2006. The land was subsequently sold pursuant to an order of the Kings County Supreme Court dated October 27, 2011.
On March 31, 2008, the decedent was moved to St. Elizabeth Ann’s Health Care and Rehabilitation in Staten Island, New *176 York. According to an affirmation submitted to the Kings County Supreme Court by the co-guardian of the decedent’s property, who was also counsel to Mauriello, the decedent could no longer remain in the S.S. Joachim and Anne Residence in Kings County because it was “simply not able to provide” the level of care the decedent required. Following a bout with pneumonia, the decedent required a feeding tube, ventilator, and full-time nursing care. St. Elizabeth Ann’s had a ventilator and other necessary equipment required for the decedent’s particular care. Subsequent testimony submitted as exhibits to Public Administrator of Kings County’s papers reveals that the decedent was well cared for at St. Elizabeth Ann’s, and that she was seen daily by nursing staff and physicians in the tracheotomy unit where she was intubated for feeding. The guardians testified on December 7, 2011 that they constantly monitored the decedent’s condition, and that St. Elizabeth Ann’s continued to provide the highest level of medical, psychiatric, and physical care which the decedent required.
Pursuant to a February 28, 2013 letter from a nurse that had been visiting the decedent for a number of years, the decedent had a permanent tracheotomy and there were no plans to wean her off of the ventilator because previous attempts to do so had caused her extreme distress. In addition, the nurse provided that there were no medical indications that the decedent’s condition would improve.
Discussion
Here, there is no dispute that prior to the removal of the decedent to Richmond County, she was a Kings County domiciliary. There is also no dispute that the decedent lacked the requisite mental capacity to change her domicile from Kings County to Richmond County. Public Administrator of Kings County alleges that this fact alone negates a finding of domicile in Richmond County. Further Public Administrator of Kings County alleges that only a court can explicitly effectuate a change of a ward’s domicile, or alternatively, that the article 81 guardian in this matter did not have the requisite intent to change her domicile. Public Administrator of Richmond County, relying on Matter of Gibbs v Berger (59 AD2d 282 [3d Dept 1977]), alleges that a court-appointed guardian may change an incompetent’s domicile without a court order if it is done in good faith and in the best interests of the ward. In response, Public Administrator of Kings County distinguishes between the authority given to Mauriello in the article 81 guardianship *177 to change the decedent’s abode, as opposed to her domicile, and alleges that no change of domicile ever occurred.
Domicile is statutorily defined as a fixed, permanent and principal home to which a person wherever temporarily located always intends to return (SCPA 103 [15]). Once established, domicile continues until intentionally abandoned or replaced by another (Matter of Newcomb, 192 NY 238 [1908]; Matter of Selzer, 237 NYS2d 484 [Sur Ct, Nassau County 1963]). A person may have several residences, but only one domicile (see e.g. Rubin v Irving Trust Co., 280 App Div 348 [1st Dept 1952]). It is incumbent upon the party seeking to prove a change of domicile to do so by clear and convincing evidence and an incompetent person generally lacks the capacity to form the union of choice and intent required to change domicile, and therefore, generally retains the domicile that existed at the time that he or she became incompetent (Matter of Urdang, 194 AD2d 615 [2d Dept 1993]; Matter of Wilhelm, 134 Misc 2d 448 [Sur Ct, Erie County 1987]). However, what is not as clear is whether the court-appointed fiduciary of the person is empowered, without express authorization from the court, to change the ward’s domicile {compare Matter of Robitaille, 78 Misc 108 [Sur Ct, NY County 1912] [holding the guardian’s removal of his ward to Canada without express authorization of the court constituted a change in domicile since it was done in good faith] with Matter of Webber, 187 Misc 674 [Sur Ct, Kings County 1946] [disagreeing with the proposition that the domicile of an incompetent can be changed by a committee and holding that the facts did not show that the court-appointed committee had the intent to change the ward’s domicile from Kings County to Westchester County]; see also Matter of Levine, NYLJ, Sept. 21, 2000 at 13, col 3; Matter of Bach, NYLJ, Jan. 8, 2004 at 22, col 3).
A review of the relevant case law reveals that the court’s ultimate conclusion as to whether or not a fiduciary was implicitly authorized to change the domicile of a ward turned on the facts of each case and a “mosaic of circumstances” (McEachron v Glans, 983 F Supp 330, 334 [ND NY 1997]). In First Trust & Deposit Co. v Goodrich (3 NY2d 410, 417 [1957]), in concluding that a Surrogate changed the domicile of the infants from New York to California, the Court of Appeals considered whether the benefit of the infants governed the Surrogate’s decision appointing California-resident relatives guardians, and the “plan or likelihood” that the infants would return to New York. In Gibbs v Berger, the Appellate Division noted its *178 reliance on the objective criteria of: (1) length of relationship with the location of changed domicile; (2) the probability the individual will live out his or her life in the location of changed domicile; (3) the abandonment of a residence in the prior domicile; (4) the absence of any other abode other than that which exists in the location of changed domicile; and (5) the existence of relatives who can provide the intangibles of love and affection who live near the location of changed domicile. In Matter of Webber, the court noted the lack of facts as to the intent of the committee to abandon the domicile of the decedent and establish a new domicile at a hospital in Westchester County.[2] The court declines to follow the general holding of Matter of Ratkowsky v Browne (267 App Div 643 [3d Dept 1944]), that a court-appointed guardian cannot change the domicile of his or her ward, instead finding that the evolution of the case law over the past 70 years evidences that depending upon the facts presented, the domicile of an incompetent can be changed. Conclusion
Applying the framework utilized in the cases above, the court concludes that the court-appointed guardian of the person changed the decedent’s domicile from Kings County to Richmond County. The undisputed facts show that Mauriello acted in the decedent’s best interest by transferring her to a facility in Richmond County that could provide the proper extensive care that she required. While it may have initially been possible that the decedent would return to Kings County, as the years went on, the annual article 81 hearing testimony shows that the decedent’s condition worsened, and that she would always require the level of care aptly provided by St. Elizabeth Ann’s. *179 Mauriello consistently expressed his satisfaction with St. Elizabeth Ann’s, and notably never expressed an intention to remove her from this facility. The decedent’s uninterrupted residence in a facility that provided the high level of care she required established her ongoing relationship with Richmond County, with no plan or likelihood that the decedent would ever return to Kings County. In fact, she remained in the continual care of St. Elizabeth Ann’s from March 31, 2008 until her death on July 12, 2013. Although the decedent’s residence was razed prior to her move to Richmond County, the sale of the land that once held the residence was authorized within the article 81 proceeding on October 27, 2011, and determined to benefit the decedent. Such sale constituted a complete abandonment of the decedent’s residence in Kings County, and judicial confirmation of that fact. Following this sale, there was never any mention or provision for the decedent’s return to Kings County during her lifetime. In essence, she had no home other than St. Elizabeth Ann’s.
Lastly, it is noted that while frequently a change in domicile may result in significant changes in both civil and property rights (see Matter of Webber), no such significant changes would flow from a determination with regard to whether the decedent died domiciled within one county or another within the City of New York (Matter of Bach] Matter of Levine). The court also notes that the statutory scheme of article 81 of the Mental Hygiene Law is to use the least restrictive form of intervention necessary to protect the ward (Matter of Bach; Matter of Levine), and therefore in many cases a change of domicile is likely to be made without express court authorization, especially when the individual is moved from one county to another in the same state. In situations where the move is made from one state to another, and there is greater possibility for significant changes in civil or property rights, courts specifically restrict the authority of a guardian regarding domicile without court order (see e.g. Matter of Roy, NYLJ, Oct. 31, 1994 at 34, col 3).
Furtherance of the Proceeding in Richmond County
The court has been made aware of an order to show cause of the Kings County Surrogate’s Court, signed on March 10, 2014, that, pending the return date of March 25, 2014, restrains the Public Administrator of Richmond County from taking any action to administer this estate or interfering with the Public Administrator of Kings County’s administration thereof.
*180 Pursuant to SCPA 703 (1), “letters granted by the court are conclusive evidence of the authority of the persons to whom they are granted until the decree granting them is reversed or modified upon appeal or the letters are suspended, modified or revoked by the court granting them.” Accordingly, the Kings County Surrogate’s Court has no authority to restrict the letters issued by this court.
Further, pursuant to SCPA 701 (3), “[n]o court except the court which issues letters shall have power to suspend, modify or revoke them, so long as the court issuing them has jurisdiction of the estate or matter in which the letters were issued.” This leads us back to the issue of subject matter jurisdiction and venue discussed above. Based upon Matter of Brosnan (NYLJ, Sept. 16, 1994 at 30, col 2), as well as Simonetti, Margolin, and Bareuther, if the issue of domicile is raised during the pendency of a proceeding, the appropriate relief is the transfer of the proceeding to the county where it is established that the decedent was domiciled.
Now that it has been determined that the decedent was domiciled in Richmond County at the time of her death, the appropriate remedy is for the matter in Kings County to be transferred here {Brosnan). This conclusion is, apparently, in accordance with the understanding of all parties, as evidenced by the request of all parties to have the issue of domicile determined by this court, as well as Public Administrator of Kings County’s reply affirmation in support of motion to intervene, wherein he stated that the answer to the question of domicile “will determine the one and only proper venue for all the Surrogate’s Court proceedings brought in this estate pursuant to SCPA § 205,” as well as conceded that “pursuant to SCPA § 704, the Kings County [Public Administrator] is entitled to administer this estate until a final determination is made concerning the Decedent’s place of domicile at the time of her death.”[3]
*181 Accordingly, the Public Administrator of Richmond County is hereby directed to continue administering the within estate, forthwith.

. A large portion of Public Administrator of Kings County’s papers discuss attempts to ascertain whether a proceeding in this estate had been filed with this court prior to his making application for letters of administration in the Kings County Surrogate’s Court. As all parties are no doubt aware, Surrogate’s Court files are public records, open and available to inspection during *175 business hours, and a search may also be conducted by the court for a fee (SCPA 2402 [13]).

. Brosnan v Behette (243 AD2d 524 [2d Dept 1997]), Matter of Horton (175 App Div 447 [2d Dept 1916]), Matter of Scher (2006 NY Misc LEXIS 4763 [Sur Ct, Kings County 2006]), Matter of Wilhelm (134 Misc 2d 448 [Sur Ct, Erie County 1987]), and Matter of Briatico (195 Misc 432 [Sur Ct, NY County 1949]), relied upon by Public Administrator of Kings County, do not involve a change of domicile by a court-appointed fiduciary of the person and are therefore not relevant to this matter. In addition, Matter of Meyer (59 Misc 2d 507 [1969]), also relied upon by Public Administrator of Kings County, involved a once incapacitated person who the court determined regained sufficient capacity to effect a change of domicile. In Matter of Crump (NYLJ, Oct. 27, 1997 at 27, col 4), the court held that a committee did not change the domicile of her ward where the only facts presented were the ward’s change of residence, and the argument by the committee that the court’s appointment of her as committee as a resident of Washington, D.C. implicitly authorized a change of the ward’s domicile to Washington, D.C. Crump is also called into question by the later decision of the Surrogate’s Court, Kings County, in Matter of Levine.

. While this court does not doubt the good faith filing of any papers in this proceeding, in this county as well as Kings County, the court questions the ability of Public Administrator of Kings County to maintain this matter in Kings County, as the Public Administrator of Richmond County has located both maternal and paternal first cousins as the known distributees of the decedent. Pursuant to SCPA 1001 (1) (f) (ii), the public administrator is required to serve as administrator when there are first cousins “only on one side” (Matter of Dowd, 18 AD2d 715 [2d Dept 1962]; Matter of Calundann, 22 *181 Misc 3d 551 [Sur Ct, Kings County 2008]). The Public Administrator of Richmond County was duly authorized to act as the administrator in this proceeding only after jurisdiction was obtained upon a prior class of distributees through their filing of waivers and consents to his appointment.