OPINION OF THE COURT
Joseph S. Mattina, S.
A motion has been brought before this court to determine whether a domicile of the decedent was changed from New York State to Texas. The facts indicate that on July 5, 1983, the decedent, Edwin Wilhelm, signed a power of attorney appointing his grandson, Joseph H. Riether, as his attorney-in-fact. The document was in standard form with a clause stating "This Power of Attorney shall not be affected by the subsequent disability or incompetence of the principal.”
Around August of 1983, Mr. Wilhelm’s mental and physical *449 condition deteriorated as he was suffering from Alzheimer’s disease. As a result, he eventually was placed in the Gowanda Nursing Home on February 13, 1984. In June of 1984, having difficulty administering his grandfather’s affairs, Mr. Riether, who lived in Texas, moved his grandfather to a nursing home located in Texas. Three weeks later, Mr. Wilhelm died. However, prior to Mr. Wilhelm’s death, the bulk of his assets had been transferred to Texas and preliminary negotiations for the sale of his home in New York were already under way. The actual contract for the sale of his residence was signed on September 28, 1984, after his death. The issue presented by this case is whether the donee of a power of attorney, Mr. Riether, could change the domicile of the donor, Mr. Wilhelm.
Although this question is one of first impression, there are several cases which the court has considered in reaching its decision. The first case is Matter of Webber (187 Misc 674 [Sur Ct, Kings County, June 1946]), which stands for the proposition that a fiduciary may change his ward’s residence but ordinarily cannot change his ward’s legal domicile. In the Webber case, the decedent, a domiciliary of Kings County, was adjudicated incompetent. Subsequently, she was removed from Kings County and took up residence in a hospital in Westchester County. During her stay at the hospital in Westchester County, the committee of her property with the consent of the committee of her person, sold her dwelling in King’s County as well as all of her personal belongings.
The respective distributees questioned the jurisdiction of the court in probate proceedings, claiming that the decedent at the time of her death was domiciled in and a resident of Westchester County. The court did not accept their contention, pointing out that an adult incompetent retains the domicile that he or she had at the time that he or she became incompetent. The reasons given by the court were as follows: "A change of domicile from one county within a State to another, or from one State to another State, or from one country to another country, might involve many changes in civil and property rights, such as citizenship, taxability and descent and distribution of property or the validity of any testamentary disposition made prior to his becoming incompetent. The very statement of the effect of a change of domicile should clearly indicate that a committee of the person has no right to effect a change of domicile, although he may have the power to effect a change in abode. Certainly the power to change a domicile of an incompetent person, if vested any *450 where, is vested in the State acting through the Supreme Court in its function as parens patriae.” (Matter of Webber, supra, p 677.) Obviously, the court, in reaching its decision, was fully cognizant of the possibility of forum shopping if the power to change the domicile was vested in the committee, and the inequitable consequences that might result therefrom; requoting above, "A change of domicile * * * might involve many changes in * * * property rights, such as * * * descent and distribution of property”. For example, the court might have been contemplating a situation where a decedent had no will, and the fact pattern is such that a son of a previous marriage attempted in a fiduciary capacity, either as a conservator, committee or under power of attorney, to change the domicile of the decedent for his own personal benefit. That is to say, suppose he moved the decedent to a State where the laws of intestacy would enhance his share to the detriment, let us say, of children born to the decedent by way of a subsequent marriage. Of course, the obvious inequities resulting in such a case are not present here. Nevertheless, the court cannot overlook the effect of a potential decision vesting the power to change domicile in the power of attorney.
In another case, Matter of Gibbs (59 AD2d 282 [3d Dept 1977]), the court’s decision appears at first blush to contradict the Webber decision. However, on closer examination it becomes evident that the Gibbs court was carving out an exception to the general rule as enunciated in Webber, and stands on its own facts.
In that case, Sharon L. Gibbs was born and raised in Broome County, New York, and remained there until she was the age of 23. Thereafter, she spent approximately five years residing in several western United States States. During that time, she would return to New York to visit her family for various lengths of time. In December of 1974, she returned to New York with all of her personal belongings, with the apparent intention of remaining there permanently. However, a young man convinced her to return to California, the State of her last residence, with the hope of an early marriage. She was in California for approximately five months in 1975, sharing an apartment and paying her share of the rent. She purchased a car and paid California income taxes for 1974. In April of 1975, she advised her mother by telephone that she was not going to get married and planned to return home shortly thereafter. It was in May of 1975 that she was involved in a serious automobile accident. While hospitalized in *451 California for several months, she received medical assistance benefits which were discontinued when she was returned by her mother to New York State in July of 1975. It was within this factual framework that New York Medicaid denied medical assistance. From that denial, Louise Gibbs as mother, natural guardian and conservator of the property of Sharon Gibbs commenced a CPLR article 78 proceeding, which was transferred to the Appellate Division of the Supreme Court to review the determination of the State Commissioner of Social Services. The question for the court was whether or not Sharon Gibbs could be considered a New York State domiciliary, so as to be eligible for New York Medicaid.
The court, after enunciating its doubts as to the right to change domicile, set forth certain objective criteria to justify a finding of domicile: "While we are unable to share the Surrogate’s confidence that a guardian’s or a committee’s right to change the domicile or residence of their ward or charge is without doubt, there being no statutory or decisional authority finally settling the issue, we reach a like conclusion because, here, as in Matter of Corr v Westchester County Dept. of Social Servs. (33 NY2d 111, supra) and Matter of Robitaille (supra), the objective criteria of (1) a long prior relationship with New York establishing a lifetime of connection with this State, (2) the highly probable fact that Sharon will live out her life in New York, (3) the abandonment of California as a residence and the judicial confirmation of that fact, (4) the absence of any abode other than New York, and (5) the fact that her parents and relatives, who can provide the intangibles of love, affection and attention that might aid in her recovery, all reside in the area of this State where she is presently hospitalized, compel the conclusion that Sharon Gibbs should be determined to be a resident of New York within the meaning of section 366 (subd 1, par [b]) of the Social Services Law.” (Matter of Gibbs, supra, pp 285-286.)
As one can readily see, the facts involved here do not meet the criteria set forth in Gibbs (supra). For example, prior to being rendered incompetent, Sharon Gibbs had expressed an intention of relocating back to New York State. In our case, there was never an intent expressed by Mr. Wilhelm to change his domicile from New York to Texas. In Gibbs, there was a lifelong relationship with New York State. As a matter of fact, the first 23 years of her life were spent in New York State, whereas here, Mr. Wilhelm lived most of his life in New York State and was only in Texas for the last three weeks of *452 his life. Finally, both the Gibbs and Webber cases dealt with court-appointed fiduciaries — Webber, a committee and Gibbs, a conservator, who concededly acted under the aegis of the court.
Beyond Webber (supra) and the objective criteria of Gibbs (supra), Matter of Arens v Shainswit (37 AD2d 274, affd 29 NY2d 663) pointed out that a durable power of attorney is not limitless. As a matter of fact, the authority is nondelegable when it deals with matters "peculiarly personal” and where it does not impinge on the efficacy of the powers of the attorney-in-fact. That is to say, if the question of domicile is one of personal concern and has no bearing on the actions of the agent to care for the principal, then the agent has no authority to act. This very principle can be clearly illustrated by the facts in Gibbs. If a power of attorney had been involved in that case, the authority to act by the power of attorney would have had a direct bearing on the agent’s ability to care for the principal, namely, to obtain New York State Medicaid. Here, the status of Mr. Wilhelm as a New York domiciliary did not, in any way, constrain or inhibit Mr. Riether’s ability to secure medical attention and care for Mr. Wilhelm in Texas. As a matter of fact, the question of domicile in no way inhibited Mr. Riether’s authority to act as the alter ego for Mr. Wilhelm, not only for his care but as to any matters dealing with the administration of Mr. Wilhelm’s affairs.
Wherefore, it is the finding of this court that the attorney-in-fact did not have the authority to change the domicile of Mr. Wilhelm, the donor of the power of attorney.