**Peggy A. RICE, Appellant,**

v.

**Mayme B. FLOYD, William A. Floyd and Guy Duerson, Jr., Attorney–in–Fact for Mayme B. Floyd, Appellees.**

No. 88–SC–477–DG.

Supreme Court of Kentucky.

April 6, 1989.

Glenn E. Acree, McBrayer, McGinnis, Leslie & Kirkland, Lexington, Charles R. Coy, Coy, Coy & Gilbert, Richmond, for appellant.

James Dean Liebman, Liebman & Liebman, Frankfort, Guy K. Duerson, Duerson & Duerson, Berea, Robert C. Moody, Richmond, for appellees.

WINTERSHEIMER, Justice.

This appeal involves a Petition pursuant to K.R.S. 387.500 which was dismissed by

the district court on the ground that an attorney-in-fact fulfilled all the purposes for which a guardian was sought by the petition. The circuit court affirmed the action of the district court and the Court of Appeals denied discretionary review. This Court granted review.

The question presented is whether a trial judge is required to conduct a hearing pursuant to K.R.S. 387.580 when a durable power of attorney is challenged by a petition for a guardianship.

Mayme Floyd is the mother of Peggy Rice. Mrs. Floyd has not been declared mentally incompetent but is wholly unable to care for herself. Prior to her disability, she executed on April 28, 1983 a Power of Attorney appointing Guy K. Duerson, a lawyer, as her attorney-in-fact. The appointment is comprehensive providing that Duerson has the power to make contracts, lease, sell or convey any of Mrs. Floyd's property, whether real or personal, to receive moneys due her, to execute all checks, leases, deeds, to invest her assets, etc. The document granting the power of attorney concludes that it shall not be affected by disability and the powers conferred herein shall be exercised notwithstanding disability. In May, 1986, Mrs. Floyd became disabled and Duerson, with the consent of her husband who is now deceased, had Mrs. Floyd admitted to the Berea Hospital.

Subsequently, Mrs. Rice filed two petitions to have herself appointed as her mother's guardian under the provisions of K.R.S. Chapter 387. The first petition was dismissed and no appeal was taken, and a second petition was also dismissed with the district judge stating that the needs of the mother as to the management of her personal and financial affairs are provided for in the Power of Attorney executed April 28, 1983, pursuant to K.R.S. 386.093. It is this order that provides the basis of the conflict in this case.

When the petition in the original proceedings was filed, an order for the examination of Mrs. Floyd was issued and a report of the interdisciplinary evaluation team determined that she was incompetent and un-

able to care for herself. Full guardianship and conservatorship was recommended for the duration of her life. The evaluation team did not believe there were any appropriate alternatives to guardianship. Although a hearing was scheduled to determine her disability, no jury was impaneled and the hearing was not conducted. The district judge dismissed the case because he believed that the power of attorney provided that the appointment survive her disability and there was no need for a guardian. In our view, the durable power of attorney provided by K.R.S. 386.093 does not make the appointment of a guardian automatically unnecessary. It was not intended to supplant the provisions of K.R.S. 387.500, the guardianship statute.

The Kentucky statute regarding durable power of attorney is derived from section 5–501 of the Uniform Probate Code (1969). The Kentucky law modified the common law principle that the acts of an attorney-in-fact taken after the principal's loss of power to contract were void. The general purpose of the Uniform Act is to change the common law rules that voided powers upon the principal's incompetency. Uniform Laws Annotated, *Uniform Durable Power of Attorney Act*, Prefatory Note p. 277 (1981). It is our interpretation that the Kentucky statute had the same purpose. K.R.S. 386.093 and K.R.S. 387.500 *et seq.* can be harmonized if this purpose is given to K.R.S. 386.093. The statutes in question provide a pattern for the systematic and rational resolution of the problems of incompetency and the time immediately prior thereto.

K.R.S. 386.093 is designed to validate the acts of the attorney-in-fact during a period of actual disability prior to a finding of legal disability. This law provides an answer to the timeless problem which existed under common law of determining when a principal became disabled and at what time the power of attorney terminated and the acts thereafter were void. *See* 2A C.J.S., *Agency* § 141.

■ The terms "incapacity" and "disability" as used in K.R.S. 386.093 do not mean an adjudication of disability pursuant to

Chapter 387. The terms are not defined in Chapter 386 and should be given their common and ordinary usage. *Dept. of Revenue v. Greyhound Corp.*, Ky., 321 S.W.2d 60 (1959). The period of incapacity or disability referred to in K.R.S. 386.093 means that time prior to an adjudication of disability during which the principal's competency is legally uncertain but is capable of being determined by the courts. K.R.S. 386.093 relates to the effect of a Power of Attorney during later uncertainty as to whether the principal is "alive or dead." There is a parallel in the statute between a missing person not proven or presumed to be dead and a person considered as disabled but not legally adjudicated as such. We believe it assists in giving proper interpretation to the terms "incapacity and disability."

Frequently, it is very uncertain as to when disability begins and K.R.S. 386.093 is very useful in eliminating questions about the legality of the acts of an attorney-in-fact during that period.

Proceeding with a guardianship petition does not infringe upon any civil or constitutional right of the principal. Rather it aids the principal in the proper judicial consideration of the rights of the parties. The durable power of attorney is not comprehensive enough to replace the provisions of Chapter 387 in regard to the administration of the estates of incompetents. The purpose of K.R.S. 387.500 is to appoint a person to take care of the day-to-day personal business of an incompetent. The scope of authority, duties and accountability of a guardian is much broader than that of a traditional power of attorney, even one intended to survive disability. The crucial phrase of K.R.S. 386.093 is found in the last sentence which states that, "[I]f a fiduciary is thereafter appointed by the court for the principal, the power of the attorney in fact shall thereupon terminate and he shall account to the court's appointed fiduciary."

It was not the purpose of K.R.S. 386.093 to permit an attorney-in-fact to undertake all the obligations of a legally appointed guardian. A "durable power of attorney is not limitless." *Matter of Wilhelm*, New York Surr.Ct., 134 Misc.2d 448, 511 N.Y.S. 2d 510, 511 (1987).

The process of appointing a guardian or conservator is the legal means by which the court applies due process to avoid the possible invasion of civil or legal rights in regard to a partial disability. K.R.S. 387.-500(2). The courts have always had the inherent duty to protect the rights and interests of incompetents. *Metcalf v. Metcalf*, 301 Ky. 817, 193 S.W.2d 446 (1946).

The position enunciated by the district court that a durable power of attorney can be substituted for a guardianship does not properly recognize the distinctions between the two statutory positions.

This Court notes that the guardian is answerable to a court and must file accountings at least annually. The attorney-in-fact is answerable and accountable only to the principal who may be mentally disabled. It is obvious that there must be adequate safeguards and control on the person who manages an incompetent's estate and that a great disparity exists between the durable power of attorney and a guardian.

A guardian must comply with K.R.S. 389A.010 *et seq.* whenever the sale of real property is involved. The attorney-in-fact may sell real estate as if it were his own. The guardian must also file biennial accounts with the district court. K.R.S. 387.-670 and K.R.S. 387.710. An attorney-in-fact is not a fiduciary as defined in K.R.S. 395.001, nor is he a fiduciary subjected to the reporting requirements of K.R.S. 387.-500 *et seq.* The attorney-in-fact is accountable only to his principal, who in this case appears to be incompetent.

The guardianship provides for broad powers and duties such as the power to select the place of living and the restrictions of personal freedom of the disabled. K.R.S. 387.660. Such powers have never been encompassed in the traditional power of attorney even the durable power of attorney. The attorney-in-fact is not restricted.

An incompetent cannot be sued and an attorney-in-fact cannot defend an action on behalf of an incompetent. Civil Rule 17.03.

Defense must be completed by a legally appointed guardian or committee.

The legal and personal requirements of a disabled person are not well satisfied by an attorney-in-fact as they might be by a guardian. We do not believe they accomplish the same goals as those expressed in the guardianship statutes.

In Kentucky, the durable power of attorney statute states that if a fiduciary is thereafter appointed for the principal, the attorney-in-fact is terminated and he must account to the court-appointed fiduciary. The appointment of a guardian was contemplated by the legislature as part of the durable power of attorney.

■ The statutes relating to the appointment of guardians are mandatory and must be strictly construed. *Downing v. Siddens*, 247 Ky. 311, 57 S.W.2d 1 (1933). K.R.S. 387.580(1)(c) & (d) require the jury to determine whether the respondent is disabled, partially disabled, or has no disability in the management of his personal and financial affairs. Upon the jury determining the respondent disabled, the court *shall*, without the jury, determine the type of guardian or conservator to be appointed. K.R.S. 387.580(3). The trial court is granted authority to determine the individual or entity to be appointed, and the court may appoint the attorney-in-fact if suitable to the task. An accounting at trial of his acts as attorney-in-fact would be relevant evidence as to his suitability. In appointing a guardian or conservator, the court must give preference to those individuals possessing qualifications enumerated in K.R.S. 387.605. The four qualifications are not listed in order of priority, but all four qualifications must be considered together in order to determine the person or entity most qualified to serve.

K.R.S. 387.500(4) merely advises the trial court of the legislative intent to impose the least restrictive measures under the individual's circumstances. The trial judge is not granted authority by this section to forego a hearing as set forth in K.R.S. 387.570, because he is of the opinion that the respondent is being adequately taken care of by other means.

■ The Uniform Probate Code (U.P.C.) was developed with the intention that the durable power of attorney would provide an alternative to court-oriented, protective procedures. The drafters of the Code realized that the existence of a power of attorney could not prevent the appointment of a court-appointed fiduciary. The Code was written so that the appointment of a fiduciary would not automatically terminate the power of attorney, but would leave it up to the fiduciary to determine if the agency was appropriate. *Uniform Probate Code* (U.L.A.) Prefatory Note (1983). The U.P.C. and the Uniform Durable Power of Attorney Act (U.D.P.A.) provide for the coexistence of durable powers and guardians or conservators, and the attorney-in-fact is accountable to the fiduciary and the principal. These acts also allow the principal to nominate the conservator or guardian in the event court proceedings are initiated. *Uniform Probate Code* (U.L.A.) Section 5–503 (1983); *Uniform Durable Power of Attorney Act* (U.L.A.) Section 3 (1983). The U.P.C. and U.D.P.A. allow the attorney-in-fact to continue to manage the principal's financial affairs, while the court-appointed fiduciary would take the place of the principal in overseeing the actions of the attorney-in-fact.

However, K.R.S. 386.093 does not follow the U.P.C. or the U.D.P.A. in the dual management of the incompetent's estate, but requires the termination for the power of attorney-in-fact upon the appointment of a fiduciary of the principal. If Floyd is determined by the jury to be disabled, the power of attorney will cease and a fiduciary as provided for in K.R.S. 387.590 will be appointed by the trial judge. K.R.S. 386.093; K.R.S. 387.580(3)(a). Should Floyd be found disabled in managing both her personal affairs and financial resources, the court shall appoint a guardian, "unless the court considers it in the best interest of the ward to appoint both a limited guardian and a conservator." K.R.S. 387.590(5).

■ It is the holding of this court that the durable power of attorney is not a

substitute for the appointment of a guardian. The existence of a durable power of attorney cannot prevent the institution of guardianship proceedings. The disabled person is entitled to have the district court exercise control and supervision of her estate by the impaneling of a jury to determine whether she is disabled pursuant to Chapter 387 of the Kentucky Revised Statutes and if so to appoint a guardian in accordance with that chapter, and if a fiduciary is appointed then the power of attorney-in-fact shall terminate and an account must be given to the court-appointed fiduciary.

The decisions of the circuit court and the district court are reversed and this matter is remanded to the district court for an appropriate hearing and proceedings consistent with this opinion.

STEPHENS, C.J., and COMBS and LAMBERT, JJ., concur.

LEIBSON, J., concurs in part and dissents in part by a separate opinion.

GANT and VANCE, JJ., join in LEIBSON's, J., opinion.

LEIBSON, Justice, concurring in part and dissenting in part.

Respectfully, I dissent. I confess to a great deal of confusion as to the holding in the Majority Opinion. I agree that there should have been a competency hearing and a hearing on the need for a guardianship. But if the Majority Opinion means that a jury's determination of disability *automatically* terminates a durable power of attorney and *mandates* the appointment of a guardian, I disagree. This interpretation of the impact of KRS 386.093 on the guardianship procedure frustrates the statutory intent, and serves no legitimate purpose.

By creating the durable power of attorney the General Assembly intended to permit an individual, while competent, to arrange for the handling of his affairs should he become incompetent. This includes the power to designate an attorney in fact to manage his affairs. Such a person is a fiduciary who may be questioned as to mismanagement of the principal's affairs to the same effect, if not by the same statutory procedure, as is true with a guardian appointed pursuant to KRS 387.500 et seq.

The guardianship statutes, as presently revised, specify that the procedure for "guardianship and conservatorship for disabled persons shall be utilized only as is necessary to promote their well-being." KRS 387.500. KRS 387.530(d) specifies that the petition for appointment of a guardian must specify the "facts and reasons supporting the need for guardianship."

In these circumstances a fair interpretation of the impact of KRS 386.093, the durable power of attorney statute, on the guardianship procedure is:

1) Under KRS 387.570, when the petition is filed for appointment of a guardian "the respondent shall have a jury trial" to decide incompetency.

2) Under KRS 387.580, if Mayme Floyd is found to be incompetent, the "court shall, at the same hearing, without a jury, determine" whether a guardian needs to be appointed or whether the durable power of attorney process in place is sufficient conservator of the incompetent's affairs.

On remand, our decision should provide that the trial court has *discretion,* after a hearing, to decide if a guardian is unnecessary even though Mayme Floyd is found to be incompetent. If the effect of our decision is to force a guardianship on Mayme Floyd even though the trial court, after a hearing, has determined that such is both contrary to the instrument she prepared while she was competent and unnecessary, we have limited the effect of the durable power of attorney statute unduly and irrationally.

Medical science has extended the limitations on human existence to the point where many of us will now linger long in a twilight zone of incompetency and disability. Statutes such as KRS 386.093 were enacted to permit those of us who want it some measure of control over what will happen in our lives when we can no longer manage our own affairs. If the legislature permits us such self-determination, as it

has done at least in part by the durable power of attorney statute, there is no reason for us to force our courts into the "big brother" role by mandating guardianship for the disabled. First, the person seeking guardianship status should have to prove that such is necessary. KRS 387.605 gives preference to the daughter, Peggy Rice, as the person to be appointed if we force a guardianship on Mayme Floyd when such is unnecessary. It is quite possible that Ms. Floyd's purpose in executing the durable power of attorney was to prevent just such eventuality.

If a jury finds Mayme Floyd incompetent, as both sides agree that she is, still there is no reason to require the trial court to appoint a guardian until first the trial court has determined, after a hearing, that such "is necessary to promote [her] well-being." KRS 387.500(3). The trial court should be left to decide, after a hearing, if management of the estate under the durable power of attorney suffices to protect Ms. Floyd's interest. She thought so, and said so, while she was competent.

GANT and VANCE, JJ., join.