RENDERED: AUGUST 26, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0211-DG
2020-SC-0305-DG

JANE SMITH                                           APPELLANT/CROSS-APPELLEE

ON REVIEW FROM COURT OF APPEALS
V.                          NO. 2018-CA-001154
JEFFERSON CIRCUIT COURT NO. 18-D-500468

JOHN DOE, A MINOR                              APPELLEE/CROSS-APPELLANT

**OPINION OF THE COURT BY JUSTICE LAMBERT**

**<u>AFFIRMING AND REMANDING</u>**

This appeal and cross appeal relate to an interpersonal protection order (IPO) entered by the general division of the Jefferson District Court between an eleven-year-old petitioner and a thirteen-year-old respondent. The Court of Appeals reversed the Circuit Court's opinion and order which upheld the District Court's entry of the IPO. The Court of Appeals reversed and held that the general division of the District Court lacked jurisdiction to enter the order. We affirm the Court of Appeals on different grounds.

We hold that the general division of the District Court properly exercised jurisdiction over the case, as the juvenile division of District Court does not have exclusive jurisdiction over IPO cases involving a minor party. However, any IPO hearing involving either a minor petitioner or respondent must be made confidential by the presiding court. In addition, we hold that a guardian

*ad litem* (GAL) must be appointed for any unrepresented minor who is a party to an IPO case in accordance with CR[1] 17.03.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Jane Smith[2] (Smith) filed a petition for an IPO on behalf of her son Brian, age eleven, on February 15, 2018.  The respondent was John Doe (Doe), age thirteen.  Brian and Doe went to the same school, were assigned to the same school bus seat, and lived in the same apartment complex.  The IPO petition alleged the following:

> I am filing obo (sic) my 11 years (sic) old son, [Brian].  On 2/15/2018, As [Brian] got off the bus today, [Doe] was yelling out [his apartment] door at [Brian] "You little fucker, your (sic) the reason why I got suspended from school." [Brian] walked from the bus and reported the incident to me.  I went to the apartment manager and told her the incident.  She advised that I file for protection.  I also called the school and spoke with the assistant principal.  I was told that the school would contact the parent to inform her of [Doe's] behavior.  I (sic) was reported to me on 2/8/2018 what had been going on between him and [Doe].  [Doe] grabbed [Brian's] hand and placed it next to his penis while slapping [Brian] on his head telling him to "slap his meat[.]"  He would scream and yell at [Brian] "Fuck me baby, fuck me."  If you every (sic) touch me down here than (sic) you are considered to be gay and called [Brian] transgendered.  Two weeks prior to [Doe] being suspended from school, he followed [Brian] to the front door of our apartment and slapped him across the face.  [Doe] is twice the size of [Brian] and I am afraid that things will get worse.  Before [Doe] was suspended, the school pulled the video from the bus and confirmed what [Brian] said was true.  I want [Doe] to stay away from [Brian].  I fear for his safety

---

[1] Kentucky Rule of Civil Procedure.

[2] We refer to the Appellant and both children by pseudonym so that their anonymity is protected.

2

getting on and off the bus and when he is at school.  I
want my son protected and for this to stop.

A temporary IPO was entered on the same day Smith filed the IPO petition, and the case was assigned to the Jefferson District Court's IPO docket pursuant to the Domestic Violence Protocol for the 30th Judicial Circuit and District Courts.[3]

A hearing on Smith's IPO petition was held before the general division of Jefferson District Court on March 1, 2018.  Brian was represented by a law student intern from The Legal Aid Society who was supervised by a licensed attorney.  Doe was not represented by counsel, and his mother (Doe's Mother) appeared on his behalf.  Doe's Mother is not an attorney.

The hearing began with the court reading Smith's petition into the record and asking her if it was correct.  Smith clarified that "top of the head" should have read "top of hand," and that the assistant principal requested the video from the bus, but never received it.  The court then allowed Smith to adopt her petition as her testimony.

Brian testified that Doe sometimes made him feel uncomfortable because of what he said.  Specifically, that Doe said, "beat my meat" a few times, and that Doe would "take [Brian's] hand and put it close to his penis and say, 'beat my meat' while slapping [Brian's] hand."  Brian said Doe did that more than

---

[3] Article III, subsection (C) of the protocol provides that "[t]he circuit clerk shall assign … interpersonal protective order cases to the District Court."

once, but he did not know how many times. Brian also said Doe would say "weird things on PlayStation," but he couldn't remember anything specific. Finally, Brian denied that Doe had ever threatened him "except for the time when [Doe] opened his door and said that [Brian] got him suspended." Brian did not call any other witnesses.

Doe did not testify on his own behalf. Doe's Mother chose not to testify because, as she told the court, she was not home when Doe allegedly yelled at Brian on February 15. Doe's Mother instead called Doe's sister (Doe's Sister) and aunt (Doe's Aunt) to testify. In relevant part, they both testified that Doe did not yell at Brian from Doe's apartment door on February 15.

Doe's Sister, a high school student, initially said she was home on the fifteenth when Doe got off the school bus. The court interrupted her testimony and noted that Doe had been suspended from school earlier that day and therefore did not take the bus home. Doe's Sister said she forgot about that. The court noted that her testimony was "not very believable" at that point, but allowed Doe's Mother to finish questioning her.

Doe's Aunt testified that she and Doe's Mother were working on the fifteenth, and that they came back to the apartment between one and three o'clock in the afternoon for lunch. Doe's Aunt said nothing out of the ordinary happened that afternoon. Following her testimony, the court noted that Doe's Aunt's statements conflicted with Doe's Mother's claim that she was not at the apartment during the time period at issue. The court therefore believed Doe's Aunt was "obviously confused" about what occurred that day.

4

Following the hearing, the court found that Doe had committed both sexual assault and stalking, and that there was a risk the behavior would reoccur in the future. The court therefore entered an IPO against Doe that would remain in effect for three years. The IPO required Doe to remain 500 feet away from the middle school that they both attended as well as the apartment complex they lived in. The court granted the school system the discretion to enforce the order in the manner they saw fit, but the Doe family's tenancy at the apartment complex was terminated. The IPO also restricted Doe from possessing a firearm during its duration.

Following the hearing, Doe obtained counsel and appealed the District Court's ruling to the Circuit Court. The Circuit Court ultimately affirmed the District Court.[4] Doe then appealed to the Court of Appeals, which reversed and remanded with orders that the IPO be vacated.[5] Doe raised a myriad of errors before the Court of Appeals, but it addressed only three on the merits. The court held: (1) that the general division of District Court lacked jurisdiction to hear the case because the juvenile division of District Court has exclusive jurisdiction over IPO cases involving a minor respondent;[6] (2) that the District

---

[4] Initially, Brian's counsel was not served with Doe's appeal to the Circuit Court and therefore did not respond to it. On May 21, 2018, the Circuit Court entered an order vacating the IPO. Thereafter, Brian's counsel filed a motion to alter, amend, or vacate, and asked for an opportunity to respond. The Circuit Court vacated its May 21 order and allowed Brian's counsel to respond. Then, on July 25, 2018, the Circuit Court entered an order affirming the District Court's entry of the IPO.

[5] *Doe v. [Smith]*, 2018-CA-001154-DG, 2020 WL 1898418, *11 (Ky. App. Apr. 17, 2020).

[6] *Id.* at *6.

Court violated Doe's due process rights by incorrectly admonishing him that his testimony could be used against him in a later criminal proceeding;[7] and (3) that the IPO was reversibly deficient because it did not contain written findings of fact.[8] Moreover, while the court did not address Doe's argument regarding the sufficiency of the evidence against him on the merits, it made some general comments about the elements of stalking and sexual abuse and the facts of this case.[9]

Smith now appeals to this Court requesting review of the Court of Appeals' holding that the juvenile division of District Court has exclusive jurisdiction over IPO cases involving minor respondents. Of the many issues Doe raises in his cross-appeal, for reasons explained below, we address only whether a GAL should have been appointed to represent him in the IPO hearing. We address other issues as required.

Additional facts are discussed below as necessary.

## II. ANALYSIS

### A. The collateral consequences exception to the mootness doctrine permits review of this case.

As a threshold matter, we must address whether it is appropriate for this Court to address the issues raised by this case notwithstanding that they are now moot. The IPO at issue was entered on March 1, 2018, and was effective

---

[7] *Id.* at *6-*8.

[8] *Id.* at *8.

[9] *Id.* at *9-*10.

for three years.  Therefore, as of March 1, 2021, the IPO is no longer in effect. This, of course, renders the issues in this case moot.[10]  Neither of the parties have addressed this issue, as briefing in this case was completed in January 2021.

"The general rule is, and has long been, that where, pending an appeal, an event occurs which makes a determination of the question unnecessary or which would render the judgment that might be pronounced ineffectual, the appeal should be dismissed."[11]  However, this rule is subject to certain exceptions.  In *Morgan v. Getter*, this Court provided a survey of the exceptions to the mootness doctrine.[12]  One exception the *Morgan* Court discussed, though it was not applicable in that case, was the "collateral consequences" exception.[13]  The Court cited a Court of Appeals case, *Caudill v. Caudill*,[14] as an example of the application of the collateral consequences exception.[15]

In *Caudill*, a domestic violence order (DVO) was entered against the petitioner's husband during the pendency of the parties' divorce.[16]  The DVO expired before the appellate record was submitted to the Court of Appeals, and

---

[10] *Morgan v. Getter*, 441 S.W.3d 94, 98-99 (Ky. 2014) ("[A] 'moot case' is one which seeks to get a judgment … upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy.").

[11] *Id.* at 99.

[12] *Id.* at 99-103.

[13] *Id.* at 99.

[14] 318 S.W.3d 112 (Ky. App. 2010).

[15] *Morgan*, at 99.

[16] *Caudill*, at 114.

the Court of Appeals ordered supplemental briefing on the issue of whether the case was moot.[17] The husband argued that "an appeal testing the sufficiency of the evidence on which a DVO has been granted is never moot because entry of a DVO follows the alleged perpetrator forever in terms of background checks for employment purposes and volunteer work such as coaching Little League sports."[18] The court agreed with the husband's argument, and held that "[t]he continuing consequences of the DVO persuade us this appeal is not moot and resolution is required."[19]

More recently, the Court of Appeals applied the collateral consequences exception to a case involving an IPO. In *Calhoun v. Wood*, a female petitioner sought, and was granted, an IPO against a male respondent who she alleged had been stalking her.[20] The IPO was only effective for six months, and it expired before the Court of Appeals could address the respondent's appeal.[21] The *Calhoun* Court, citing *Caudill*, held that the collateral consequences exception equally applied to cases involving IPOs:

> It appears the purpose and intent behind, and the interpretation of, the DVO statutes are almost identical to that of the IPO statutes. *Compare* KRS 403.715 *with* KRS 456.020. Therefore, the reasoning in *Caudill* is applicable to the case at hand, and we hold that [the respondent's] appeal meets the "collateral consequences" exception to mootness.[22]

---

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] 516 S.W.3d 357, 359 (Ky. App. 2017).

[21] *Id.*

[22] *Id.* at 360.

We agree with the Court of Appeals' reasoning in *Calhoun* that the similarities between IPOs and DVOs make the application of the collateral consequences exception appropriate in cases involving an IPO that expires prior to resolution on appeal. Accordingly, we hold that the issues raised in this case meet the collateral consequences exception to the mootness doctrine and, as a consequence, will address the merits of the appeal and cross-appeal.

We must pause to review the relevant IPO statutory structure. The statutes governing IPOs, KRS 456.010-456.180, were enacted by our general assembly in January 2016 and are housed within Title XLII of KRS: "Miscellaneous Practice Provisions," whereas the statutes governing DVOs, KRS 403.715-403.785, can be found under Title XXXV of KRS: "Domestic Relations." But, though they are housed under different portions of KRS, the statutes governing IPOs and DVOs are nearly identical. For example, the statute governing how the IPO statutes should be interpreted almost perfectly tracks the language of the statute governing how the DVO statutes should be interpreted. Specifically, KRS 456.020 provides that KRS Chapter 456 shall be interpreted to:

> (a) Allow victims to obtain effective, short-term protection against further wrongful conduct in order that their lives may be as secure and as uninterrupted as possible;

> (b) Expand the ability of law enforcement officers to effectively respond to further wrongful conduct so as to prevent future incidents and to provide assistance to the victims;

> (c) Provide peace officers with the authority to immediately apprehend and charge for violation of an order of protection any person whom the officer has probable cause to believe has violated

9

an order of protection and to provide courts with the authority to conduct contempt of court proceedings for these violations;

(d) Provide for the collection of data concerning incidents of dating violence and abuse, sexual assault, strangulation, and stalking in order to develop a comprehensive analysis of the numbers and causes of such incidents; and

(e) Supplement and not repeal or supplant any duties, responsibilities, services, or penalties under KRS Chapters 209, 209A, and 620.[23]

Compare the foregoing language with KRS 403.715, which directs that KRS 403.715 through 403.785 shall be interpreted to

(1) Allow victims to obtain effective, short-term protection against further wrongful conduct in order that their lives may be as secure and as uninterrupted as possible;

(2) Expand the ability of law enforcement officers to effectively respond to further wrongful conduct so as to prevent future incidents and to provide assistance to the victims;

(3) Provide peace officers with the authority to immediately apprehend and charge for violation of an order of protection any person whom the officer has probable cause to believe has violated an order of protection and to provide courts with the authority to conduct contempt of court proceedings for these violations;

(4) Provide for the collection of data concerning incidents of domestic violence and abuse in order to develop a comprehensive analysis of the numbers and causes of such incidents; and

(5) Supplement and not repeal or supplant any duties, responsibilities, services, or penalties under KRS Chapters 209, 209A, and 620.

---

[23] In addition, KRS 456.020(2) provides that "[n]othing in this chapter is intended to trigger the application of the provisions of 18 U.S.C sec. 922(g) as to an interpersonal protective order issued on the basis of the existence of a current or previous dating relationship." KRS 403.715 does not contain a parallel provision to KRS 456.020(2).

The only difference between the foregoing is KRS 456.020(d) and KRS 403.715(4), respectively. In particular, the IPO statutes seek to provide for the collection of data for "incidents of dating violence and abuse, sexual assault, strangulation, and stalking,"[24] while the DVO statutes seek to provide for the collection of data for "incidents of domestic violence and abuse."[25] This distinction goes to the heart of the difference between IPOs and DVOs, namely: to whom the respective protective orders offer relief.

A petition for a DVO may only be filed by a "victim of domestic violence and abuse,"[26] or an adult on behalf of a minor who is a victim of domestic violence and abuse.[27] This provision limits the pool of potential DVO petitioners, as "domestic violence and abuse" is defined as "physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault **between family members or members of an unmarried couple**."[28] Therefore, in order to extend the availability of protective orders to victims of certain harmful acts who are not "family members" or "members of an unmarried couple" with an alleged perpetrator,

---

[24] KRS 456.020(d).

[25] KRS 403.715(4).

[26] KRS 403.725(1)(a).

[27] KRS 403.725(1)(b).

[28] KRS 403.720(1) (emphasis added).

11

the General Assembly enacted KRS Chapter 456. Under Chapter 456, an IPO petition may be filed by a victim of "dating violence and abuse,"[29] "stalking,"[30] or "sexual assault,"[31] or by an adult on behalf of a minor who is a victim or dating violence and abuse, stalking, or sexual assault.[32]

Apart from who may file a petition for an IPO or DVO, the statutes governing the respective protective orders read and operate in much the same way. And, significantly for our purposes, once an IPO is entered against a respondent, it will continue to "follow" them for things like background checks in precisely the same manner that DVOs do. This is true even when, as in this case, the respondent is a minor. Here, Doe was treated as an adult for the purposes of the IPO proceedings. And, though we hold in Section II(B) of this Opinion that IPO *hearings* involving minors must be made confidential, once an IPO is entered, it will be made public record regardless of the fact that the respondent was a minor.

---

[29] KRS 456.030(1)(a). "Dating violence and abuse" is defined as "physical injury, serious physical injury, stalking, sexual assault, strangulation, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault occurring between persons who are or have been in a dating relationship[.]" KRS 456.010(2).

[30] KRS 456.030(1)(b). "Stalking" is defined "conduct prohibited as stalking under KRS 508.140 or 508.150, or a criminal attempt, conspiracy, facilitation, or solicitation to commit the crime of stalking[.]" KRS 456.010(7).

[31] KRS 456.030(1)(c). "Sexual assault" is defined as "conduct prohibited as any degree of rape, sodomy, or sexual abuse under KRS Chapter 510 or a criminal attempt, conspiracy, facilitation, or solicitation to commit any degree of rape, sodomy, or sexual abuse, or incest under KRS 530.020[.]" KRS 456.010(6).

[32] KRS 456.030(1)(d).

**B. The Court of Appeals erroneously held that the general division of District Court lacked subject matter jurisdiction to preside over this case.**

The first issue to be addressed is whether the juvenile division of District Court has exclusive jurisdiction over IPO cases involving a minor petitioner and/or respondent. Whether a court has the requisite jurisdiction to hear a case is a question of law.[33] We will therefore conduct a de novo review, affording no deference to the decisions below.[34]

The Court of Appeals vacated the IPO in this case based on its holding that the general division of the District Court lacked subject matter jurisdiction to preside over an IPO case involving a minor respondent.[35] The court's analysis was as follows: KRS 24A.010(1) grants original jurisdiction to the District Court in all matters specified in KRS 24A.130.[36] KRS 24A.130, in turn, states that "[t]he juvenile jurisdiction of the District Court shall be exclusive in all cases relating to minors in which jurisdiction is not vested by law in some other court."[37] KRS 456.030(6)(a) gives concurrent jurisdiction to both District and Circuit Court over IPO cases.[38] Therefore, the court reasoned,

---

[33] *Commonwealth v. B.H.*, 548 S.W.3d 238, 242 (Ky. 2018).

[34] *Id.*

[35] *Doe*, at *6. We note here that the Court of Appeals impliedly did not believe that the juvenile division would have exclusive jurisdiction over a case involving a minor *petitioner* and an adult respondent. *Id.* n. 5.

[36] *Id.*

[37] *Id.*

[38] *Id.*

because jurisdiction over IPO cases is not vested exclusively in the circuit court, where the respondent is a minor an IPO hearing must take place before the juvenile session of the district court as it has exclusive jurisdiction "in all cases relating to minors in which jurisdiction is not vested by law in some other court[.]"[39]

The Court of Appeals also found the language of KRS 610.010(1), providing that "the juvenile session of the District Court of each county shall have exclusive jurisdiction in proceedings concerning any child living or found within the county who has not reached his or her eighteenth birthday," to be significant.[40] For the reasons that follow, we respectfully disagree with the Court of Appeals' analysis and hold that the juvenile division of District Court does not have exclusive jurisdiction over IPO cases involving a minor party. We further hold that an IPO hearing involving either a minor petitioner or a minor respondent must be made confidential.

As discussed *supra*, KRS Chapter 456 is a standalone chapter of KRS that exclusively covers IPOs. KRS 456.030 directs that "[j]urisdiction over petitions filed under this chapter shall be concurrent between the District Court and Circuit Court[,]"[41] and that "[a]ny judge to whom a petition is referred under subsection (6) of this section shall have full authority to review and hear a petition and subsequently grant and enforce an interpersonal protective order."[42] This grant of concurrent jurisdiction was provided by our

---

[39] *Id.*

[40] *Id.*

[41] KRS 456.030(6)(a).

[42] KRS 456.030(7).

14

General Assembly without an exception for cases involving a minor petitioner or respondent. This omission is particularly significant in light of the fact that KRS 456.050 clearly evinces that the General Assembly anticipated that there would be cases brought under Chapter 456 wherein one or both parties would be a minor:

> (1) Prior to or at a hearing on a petition for an interpersonal protective order:
>
>> (b) **If the petitioner or respondent is a minor**, the court shall inquire whether the parties attend school in the same school system to assist the court in imposing conditions in the order that have the least disruption in the administration of education to the parties while providing appropriate protection to the petitioner.[43]

"In cases involving statutory interpretations, the duty of the court is to ascertain and give effect to the intent of the General Assembly. We are not at liberty to add or subtract from the legislative enactment or discover meanings not reasonably ascertainable from the language used."[44] Here, the General Assembly gave concurrent jurisdiction over IPO cases to our District and Circuit Courts while specifically contemplating that those cases may involve minor parties. If it wanted to give the juvenile division of District Court exclusive jurisdiction over IPO cases involving a minor party, it would have done so. We therefore cannot uphold the Court of Appeals' opinion to the contrary.

---

[43] KRS 456.050(1)(b) (emphasis added).

[44] *Commonwealth v. Harrelson*, 14 S.W.3d 541, 546 (Ky. 2000).

In addition, the Court of Appeals' reliance on KRS 610.010 is unconvincing. That statute, which is part of Kentucky's Unified Juvenile Code, provides:

> Unless otherwise exempted by [the Unified Juvenile Code], **the juvenile session of the District Court of each county shall have exclusive jurisdiction in proceedings concerning any child living or found within the county** who has not reached his or her eighteenth birthday or of any person who at the time of committing a **public offense** was under the age of eighteen (18) years, **who allegedly has committed a public offense prior to his or her eighteenth birthday**, except a motor vehicle offense involving a child sixteen (16) years of age or older.[45]

A minor respondent to an IPO action does not stand accused of committing a public offense.[46] An IPO is an order of civil protection and an entry of an IPO against a minor does not equate to a conviction of a public offense. Additionally, KRS 610.010(2), which was amended subsequent to the enactment of KRS Chapter 456, lists several types of cases for which either the juvenile division of District Court or the family division of Circuit Court are granted exclusive jurisdiction when the case concerns a minor, and IPO proceedings are not among them.[47] Again, if the General Assembly wanted to

---

[45] KRS 610.010(1) (emphasis added).

[46] *See* KRS 600.020(51) (defining a "public offense action" is as "an action, excluding contempt, brought in the interest of a child who is accused of committing an offense under KRS Chapter 527 or a public offense which, if committed by an adult, would be a crime, whether the same is a felony, misdemeanor, or violation, other than an action alleging that a child sixteen (16) years of age or older has committed a motor vehicle offense[.]").

[47] Specifically, the circumstances listed are if the minor is: "(a) Is beyond the control of the school or beyond the control of parents as defined in KRS 600.020; (b) Is an habitual truant from school; (c) Is an habitual runaway from his or her parent or other person exercising custodial control or supervision of the child; (d) Is dependent,

ensure that IPO cases involving minors were the sole province of the juvenile division of District Court, or the family court division of Circuit Court for that matter, it would have done so.

Notwithstanding, we share the concern of both the Court of Appeals and Doe that allowing IPO hearings to proceed outside the confines of juvenile court prevents minors from benefiting from the confidentiality that juvenile court provides. We therefore further hold that if the petitioner or respondent to an IPO action is a minor the IPO hearing must be confidential. This holding applies regardless of whether the case proceeds in District Court or Circuit Court and shall be enforced regardless of whether a confidential hearing is requested by one of the parties.[48]

## C. A GAL must be appointed to unrepresented minor petitioners and respondents in IPO cases.[49]

---

neglected, or abused; (e) Has committed an alcohol offense in violation of KRS 244.085; or (f) Is mentally ill."

[48] We clarify that only the hearing should be closed as records relating to the issuance of interpersonal protective orders must be public for entry into the Law Information Network of Kentucky. KRS 456.110.

[49] Doe asserts two other arguments related to this issue. First, that the trial court erred by allowing Doe's Mother to engage in the unauthorized practice of law, and, second, that the trial court erred by failing to conduct a competency hearing for Doe.

Doe failed to raise his argument regarding his Mother engaging in the unauthorized practice of law in his motion for discretionary review. We therefore will not address it. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 738 (Ky. 2009) (quoting *Wells v. Commonwealth*, 206 S.W.3d 332, 335 (Ky.2006)). We will however note the holding of *Azmat as Next Friend of Azmat v. Bauer*, 588 S.W.3d 441 (Ky. 2018). In that case this Court held that a mother who proceeded *pro se* as next friend of her child in a medical negligence case "did not engage in the unauthorized practice of law because she was specifically authorized and ordered to proceed as such according to the circuit court's order." *Id.* at 449.

Further, our holding that GALs must be appointed for unrepresented minors who are parties to an IPO proceeding negates the need to discuss whether a

17

The next issue to be addressed was raised before, but not addressed by, the Court of Appeals. That is, whether an unrepresented minor that is a petitioner or respondent to an IPO action must be appointed counsel. As we do not consider it appropriate to permit or direct a parent to represent a child in an IPO hearing, we hold that unrepresented minors to an IPO action must have a GAL appointed to represent them.[50]

A good starting point is CR 17.03. In relevant part, that rule provides:

(1) Actions involving unmarried infants or persons of unsound mind shall be brought by the party's guardian or committee, but if there is none, or such guardian or committee is unwilling or unable to act, a next friend may bring the action.

(2) **Actions involving unmarried infants** or persons of unsound mind **shall be defended by the party's guardian or committee**. **If there is no guardian or committee** or he is unable or unwilling to act or is a plaintiff, **the court**, or the clerk thereof if its judge or judges are not present in the county, **shall appoint a guardian ad litem to defend** unless one has been previously appointed under Rule 4.04(3) or the warning order attorney has become such guardian under Rule 4.07(3).

(3) **No judgment shall be rendered against an unmarried infant** or person of unsound mind **until the party's guardian or committee or the guardian ad litem shall have made defense** or filed a report stating that after careful examination of the case he is unable to make defense.[51]

Smith makes two arguments in support of her contention that the appointment of GALs is not required for minor parties in an IPO proceeding,

---

competency hearing must be held for said minors, as they will not be required to appear *pro se*.

[50] We note for clarity that, though the requirements for GAL's vary from state to state, GALs in Kentucky must be licensed attorneys. KRS 387.305(2) ("A guardian ad litem must be a regular, practicing attorney of the court").

[51] (emphasis added).

18

notwithstanding the foregoing language of CR 17.03.  First, she contends that the IPO statutes allow for minor petitioners and respondents, but do not require that counsel be appointed for them.  Therefore, she questions whether CR 17.03 is applicable to these circumstances.  Second, she asserts that even if this Court holds that CR 17.03 is applicable, the rule expressly authorized Doe's mother to represent him.  She supports this by contending that the term "guardian" as it is used in CR 17.03 carries the more colloquial meaning of "parent" rather than a court appointed guardian.  In the alternative, Smith concedes that this Court should adopt a rule requiring the appointment of counsel for unrepresented minor petitioners and respondents if we hold that CR 17.03 does not authorize a parent to represent their minor child in an IPO proceeding.  With that said, we address each of her arguments in turn.

Smith is correct that KRS Chapter 456 does not require counsel to be appointed for a minor petitioner or respondent.  However, we disagree that this omission precludes application of CR 17.03.  CR 17.03(2) states that "**[a]ctions** involving unmarried infants ... shall be defended by the party's guardian or committee ..."[52]  The term "action" has no qualifying language and we therefore interpret it to mean *any* civil action[53] involving an unmarried infant.  Similarly, CR 17.03(3) provides that "**[n]o judgment** shall be rendered against an

---

[52] (Emphasis added).

[53] We acknowledge that the Rules of Civil Procedure are generally applicable to criminal proceedings.  Kentucky Rule of Criminal Procedure (RCr) 13.04 ("The Rules of Civil Procedure shall be applicable in criminal proceedings to the extent not superseded by or inconsistent with these Rules of Criminal Procedure.").  But for the purposes of our analysis, we refer only to civil proceedings and judgments.

unmarried infant … until the party's guardian or committee or the guardian ad litem shall have made defense."[54]  This language is clear and unambiguous: "no judgment" means no civil judgment of any kind.  As stated *supra*, an IPO is an order of civil protection and it therefore stands to reason that the Rules of Civil Procedure, including CR 17.03, should apply to IPO proceedings.

We likewise disagree with Smith's argument that "guardian" under CR 17.03 means "parent."  The Rules of Civil Procedure do not provide a definition of "guardian."  However, this Court has previously utilized the definition of guardian provided in KRS Chapter 387, which concerns the administration of trusts and estates for persons under legal disability, such as minors.  KRS 387.010 defines "guardian" as "an individual, agency, or corporation appointed by the District Court to have care, custody, and control of a minor and to manage the minor's financial resources."[55]  And, the same statute explicitly distinguishes between a guardian and a parent by also defining the term "parent" as "a mother or father whose parental rights have not been terminated or suspended by prior court order."[56]

In *Morgan, supra,* the Court utilized Chapter 387's definition of guardian when discussing the difference between a guardian and a GAL:

> Broadly speaking, a "guardian" is an individual or corporation appointed by a court to care for the person and to "guard" the estate of a minor or other legal incompetent.  **See KRS 387.010(3)** (defining "guardian" in the context of trust and estate

---

[54] (Emphasis added).

[55] KRS 387.010(3).

[56] KRS 387.010(7).

20

administration).  A guardian *ad litem* (a guardian for the purposes of suit or litigation), is then, broadly, a person appointed by a court to appear on behalf of, to "guard," a minor (or other incompetent) in a lawsuit.[57]

More significantly, in *Rice v. Floyd*,[58] this Court stated that CR 17.03's use of the word "guardian" means a legally appointed guardian.  In *Rice*, Mayme Floyd (Mrs. Floyd), an adult woman, was wholly unable to take care of herself, though she had not been declared mentally incompetent.[59]  Prior to her disability, Mrs. Floyd executed a comprehensive durable power of attorney to an attorney.[60]  Thereafter, Mrs. Floyd's daughter Peggy Rice (Mrs. Rice) filed a petition to have herself appointed as Mrs. Floyd's guardian under KRS Chapter 387.[61]  The trial court dismissed the petition on the basis that "the needs of [Mrs. Floyd] as to the management of her personal and financial affairs are provided for in the [previously executed] Power of Attorney."[62]

Consequently, the issue addressed by the *Rice* Court was "whether a trial judge is required to conduct a hearing pursuant to KRS 387.580 when a durable power of attorney is challenged by a petition for guardianship."[63]  In addressing that issue the Court discussed the numerous differences between a

---

[57] *Morgan*, at 106 (emphasis added).

[58] 768 S.W.2d 57 (Ky. 1989).

[59] *Id.* at 58

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.*

durable power of attorney and a guardianship.[64]  Of particular relevance for our purposes, the *Rice* Court noted that "[a]n incompetent cannot be sued and an attorney-in-fact cannot defend an action on behalf of an incompetent.  Civil Rule 17.03.  Defense must be completed **by a legally appointed guardian** or committee."[65]

Additionally, the *Rice* case and other cases like it indirectly demonstrate why CR 17.03's use of the word "guardian" cannot *per se* mean "parent."  CR 17.03 covers both minors and adult "persons of unsound mind."  If "guardian" were to mean "parent," then, for example, an adult child or spouse of a person of unsound mind could never be an appointed "guardian" under CR 17.03, which is a common occurrence.

We accordingly hold that CR 17.03 mandates the appointment of a GAL for an unrepresented minor party to an IPO case.  "[T]he GAL is the child's agent and is responsible … for making motions, for introducing evidence, and for advancing evidence-based arguments on the child's behalf."[66]  Accordingly, because Doe did not have a guardian, committee, or counsel, the District Court should have appointed a GAL to represent him.  The failure to afford Doe the assistance of a GAL means that the IPO entered against him cannot stand. But, as the IPO is no longer in effect, the only relief we can afford Doe is to

---

[64] *Id.* at 59

[65] *Id.* 59-60 (emphasis added).

[66] *Morgan*, at 114.

remand with directions that all traces of the IPO be removed from the court record.[67]

**D. Additional issues.**

**(1)** *The District Court's admonishment regarding Doe's testimony.*

At the beginning of the IPO hearing, the court told Doe's Mother that, although no criminal charges had been filed against Doe, the underlying conduct Doe was alleged to have engaged in was criminal in nature. The judge told her that if Doe testified anything he said could be used against him by prosecutors in a criminal trial, but he had a Fifth Amendment[68] right not to incriminate himself. The judge then asked Doe's Mother if Doe intended to testify, and Doe's Mother replied that he did not.

Later, after Brian testified but before Doe's witnesses testified, Doe's Mother told the court that Doe wanted to testify. The judge again told Doe's Mother that Doe had a Fifth Amendment right not to incriminate himself and that his testimony could be used against him in a criminal proceeding. After this exchange, Doe's Mother decided not to call Doe as a witness. After both parties presented their evidence, and after the judge ruled that she was going to enter the IPO, Doe's Mother interjected. Doe's Mother told the court that she was confused; she said that Doe did not want to incriminate himself, but he

---

[67] *See Caudill*, at 115 (holding "the entry of the [expired] DVO was not supported by substantial evidence [and therefore] it cannot stand...the DVO entered by the Pike Circuit Court is reversed and remanded with direction that all traces of the erroneously entered DVO be removed from the court record.").

[68] *See* U.S. Const. amend. V.

did want to prove that he did not say the things alleged in the petition. The judge again told her that Doe could testify or not testify, but that anything he said could be used against him in a court of law. The judge then told Doe's Mother that she was going to enter the IPO, and Doe's Mother could appeal it if she so wished. Shortly thereafter, Doe's Mother expressed remorse about not calling Doe to testify when she discovered that she was going to be evicted from her home.

Doe urges this Court to hold that the District Court's admonishment was error under KRS 456.070(6), which states that "[t]estimony offered by an adverse party in a hearing ordered pursuant to KRS 456.040 shall not be admissible in any criminal proceeding involving the same parties except for purposes of impeachment." In response, Smith argues that the Court of Appeals ruled for Doe on this issue, and that she does not contest that holding. Further, she asserts that neither party requested review of this issue in their motions for discretionary review, and we therefore should not address it. We agree. "Issues not raised in the motion for Discretionary Review will not be addressed by this Court despite being briefed before us[.]"[69] Accordingly, the portion of the Court of Appeals' opinion addressing this issue is the law of the case.[70]

---

[69] *Brooks*, 283 S.W.3d at 738.

[70] *Coleman v. Bee Line Courier Serv., Inc.*, 284 S.W.3d 123, 129 (Ky. 2009) (holding "[b]ecause Coleman failed to raise the issue of whether the Court of Appeals properly affirmed the dismissal of her counterclaims in her discretionary review motion, that portion of the judgment of the Court of Appeals stands as the law of the case.").

24

We simply restate the Court of Appeals' holding that a respondent to an IPO petition, whether an adult or minor, must be correctly apprised that his testimony during the IPO hearing may only be used against him in a later criminal proceeding involving the same parties for the purposes of impeachment in accordance with KRS 456.070(6).[71]

**(2) *The IPO's lack of written findings.***

The next issue was raised *sua sponte* by the Court of Appeals. The IPO entered in this case contains no findings of fact, and the District Court did not otherwise provide written findings of fact anywhere in the record to support its entry of the IPO. CR 52.01 directs that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.]" The Court of Appeals accordingly held that the District Court erred by failing to make any written findings of fact in its IPO.[72] More specifically, it held:

> [a]lthough neither party raised this issue, there were no written factual findings in this case. We wish to clarify that just as written factual findings are required for DVO cases, they are also required for IPO cases. Therefore, an IPO decision that fails to contain written factual findings will be vacated even if the issue is not raised. *See Castle v. Castle*, 567 S.W.3d 908, 916 (Ky. App. 2019);[73] *Thurman v. Thurman*, 560 S.W.3d 884, 887 (Ky. App.

---

[71] *Doe*, at *6-*8.

[72] *Doe*, at *8.

[73] In *Castle*, the Court of Appeals *sua sponte* raised the failure of the trial court to include written findings to support the entry of the DVO against the respondent and reversed based on that error. 567 S.W.3d at 916.

2018).[74]  It is appropriate to treat factual findings in DVO cases and IPO cases the same because "the purpose and intent behind, and the interpretation of, the DVO statutes are almost identical to that of the IPO statutes." *Calhoun v. Wood*, 516 S.W.3d 357, 360 (Ky. App. 2017).[75]

Doe failed to raise this issue in his motion for discretionary review, and we therefore will not address it.[76]  The Court of Appeals' ruling on this issue stands as the law of the case.[77]

### (3) *The sufficiency of the evidence and gun restriction order.*

Doe also argues that the district court lacked sufficient evidence to enter an IPO against him on the basis that he committed sexual assault and stalking against Brian.  He also contends that it was error for the District Court to order him not to "possess, purchase, obtain, or attempt to obtain a firearm" during the duration of the IPO.  But, as we are reversing, remanding, and ordering that the IPO be removed from the court record on the basis of the court's failure to appoint a GAL for Doe, we decline to address these arguments.

---

[74] In *Thurman*, the Court of Appeals reversed due to failure to properly serve the respondent, resulting in his inability to participate in the DVO hearing.  560 S.W.3d at 886-87.  But the court further noted in dicta that "the family court must make written findings to support the issuance of the DVO.  The DVO on appeal consists entirely of the court's checking a single box on AOC Form 275.3 indicating it found [respondent] had committed domestic violence against [petitioner].  The court made no additional written findings, either on the form itself or the accompanying docket sheet.  A family court is obligated to make written findings of fact showing the rationale for its actions taken under KRS Chapter 403, including DVO cases, even if the rationale may be gleaned from the record."  *Id.* at 887.

[75] *Doe*, at *8.

[76] *Brooks*, 283 S.W.3d at 738.

[77] *Coleman*, 284 S.W.3d at 129.

### III.  CONCLUSION

Based on the foregoing, we affirm the Court of Appeals on different grounds and hold that the legislature has granted jurisdiction of IPO cases to both district and circuit courts.  We further hold that it was reversible error for the District Court to permit Doe's Mother to represent Doe in lieu of appointing a GAL to represent him.  This case is therefore remanded with further instructions that all traces of the IPO entered against Doe be removed from the court record.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

Dorislee Jackson Gilbert
The Mary Byron Project
Louisville, KY

COUNSEL FOR APPELLEE:

Gregory Ward Butrum
Gregory Ward Butrum, PLLC